## Case No. 4,152.

### DUNHAM v. NEW ENGLAND MUT. INS. CO.

[1 Lowell, 253.] [1]

District Court, D. Massachusetts. July, 1868. [2]

F. C. Loring, for libellant.

H. C. Hutchins, for respondents.

LOWELL, District Judge. I am of opinion that no good bar to this proceeding is shown. The decree in England is res inter alios, and is admissible in evidence here only to prove satisfaction pro tanto. True, there can be but one satisfaction, but the decree does not prove that full satisfaction has been obtained, because there is no privity between the insurance company and the Donald McKay as joint contractors or joint trespassers which shall make a satisfaction obtained from one a conclusive settlement in favor of the other. Between the assured and his underwriter the former is only bound to good faith and reasonable diligence. If the underwriter pays the loss, he is subrogated to the rights of the assured against third persons. The Monticello, 17 How. [58 U. S.] 155; Garrison v. Memphis Ins. Co., 19 How. [60 U. S.] 312; Randal v. Cockran, 1 Ves. Sr. 98; Yates v. Whyte, 4 Bing. N. C. 272; White v. Dobinson, 14 Sim. 273. If the assured recovers of the others he must give credit for the amount recovered, and if he fraudulently refuses to prosecute and attempts to release a trespasser, he must still give credit for all that he might have recovered. Atlantic Ins. Co. v. Storrow, 5 Paige, 285; Hart v. Western R. Co., 13 Metc. [Mass.] 99. And wilfully negligent conduct by which the underwriter had lost his remedy might have the same effect. But it does not follow that the judgment recovered by the assured against the trespasser is conclusive evidence of the amount of the loss. Try it in the reverse case, and suppose the decree not to have been satisfied, without any fault on the part of the assured, would it be evidence against the underwriter of the amount of the loss? Or would a compromise effected in good faith

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]
[2] [Affirmed in Case No. 10,155.]

and with reasonable diligence discharge the insurer?

I admit the soundness of the argument that if the decree is to be received as evidence of any fact excepting that it was made and has been satisfied, it should be admitted for one party as well as the other, and in this particular the libel appears to rely upon the decree for more than it will bear. I do not propose to examine that decree. It is conclusive on the res and on all parties to it, including the underwriters, so far as the Donald McKay is concerned, but it is not evidence as between these parties of the fact of the collision, its consequences, or its causes. It is open, as I have said, to the respondents to show that the libellant might have recovered more by due diligence, but in the absence of any such allegation or proof, and upon this hearing as the parties have chosen to arrange it, I cannot admit it as a bar. The case most analogous to this is Pentz v. Aetna Fire Ins. Co., 9 Paige, 568, arising out of the disastrous fire of 1835 in the city of New York. In that case Chancellor Walworth held, overruling the vice-chancellor, that the assured could recover the amount of his actual loss, deducting the damages he had obtained from the corporation on the verdict of a jury assessing the same loss, which the city were collaterally bound to pay under a statute by virtue of which they had destroyed the plaintiff's house in order to check the fire. And see the remarks of Shaw, C. J., in Hart v. Western R. Co., 13 Metc. [Mass.] 105, &c.

By the agreement filed in this cause, it was to be sent to an assessor if any damages were recoverable by the libellant; and in strict compliance with the stipulation I might have contented myself with a simple reference, because it must be conceded, as it was at the argument, that the expenses of asserting the libellant's rights against the Donald McKay would be a just charge against the underwriters, or, what is the same thing, a just deduction from the credit to be made them, and so would any loss of interest that may have occurred during the prosecution of that suit. But as the main question intended to be raised by the agreement would at once recur in making the assessment, I felt bound to express my views upon it. Interlocutory decree accordingly.

After this decree was entered, the parties filed their respective adjustments, and stipulated that these should be treated as alternative reports of an assessor. No evidence was given of any fraud or negligence on the part of the libellant or his agents, but it did appear that for some unexplained reason he had not recovered in the collision suit the whole of his loss. The question of law arising out of the admitted facts, and argued by the same counsel who spoke to the cause before, was whether the damages recovered in England should be deducted from the gross amount of the repairs, or the partial loss should be assessed first and the credit be allowed against it. In the latter case, the assured had already been largely overpaid, by the operation of the rule deducting one-third new for old, while in the former there was a balance due him.

LOWELL, District Judge. The respondents insist that the libellant in this insurance cause must be governed by the law of insurance, according to which his loss is conclusively presumed to have been but two-thirds of the expense of repairing his vessel. It accords better with the truth and justice of the case that the assured should have the benefit of this difference in the rules of damages. In truth the payment by the trespasser, whether of a greater or less sum, is made on account of the gross damages and not of the net, and by the rule governing the application of payments the assured has a right to apply it as it is paid. Suppose the parties had in good faith and with due diligence compromised the dispute, and the alleged wrong-doer had in fact made two-thirds of the repairs, and the assured the remaining third, specifically; or, what is more likely to happen, suppose the admiralty court had found both parties in fault and had given the assured one-half the gross damages, must he credit the sum so recovered as three-quarters of his damages when he receives it as one-half? It is obvious that the respondents are claiming the benefit of both rules, as each happens to work in their favor; it is two-thirds when they are paying, and the whole when they are receiving. They cannot justly object that their rule is so worked as to credit them with two-thirds the gross receipts when they pay but two-thirds the gross costs and expenses of repairs.

A considerable, though not a full and strict analogy is found in those cases which decide that the value of the old materials sold by the assured is to be deducted from the gross repairs. Byrnes v. National Ins. Co., 1 Cow. 265; Brooks v. Oriental Ins. Co., 7 Pick. 259; Eager v. Atlas Ins. Co., 14 Pick. 141. It is urged that if the loss had been adjusted and paid by the respondents in the first instance, they would have been subrogated to the rights of the assured, and might have recovered the whole loss, and that whatever sum they had recovered would have gone to indemnify them in full in the first instance, before any obligation would arise on their part to account to the assured; and that the order in which the suits are brought cannot affect the rights of the parties. No authorities are cited for this proposition, excepting those which establish the general principle of subrogation. Subrogation is a doctrine of courts of equity, and I am not prepared to admit that when a person has paid two-thirds of a debt, he will, in equity, be subrogated to the whole security. No doubt the assured may, if he choose, assign his whole demand against

the wrong-doer to the underwriters, and he may do so, perhaps, by acts and refusals to act as well as in express terms; but in such a case the rights of the parties will depend upon the terms, express or implied, of the assignment itself, and not upon the relations which are created by the contract of insurance. The liability of the trespasser may be likened to a collateral security, not furnished by the underwriters, and in which they have no interest excepting to see it properly applied. The ship-owner has the right to apply it to the loss to which it is properly applicable, namely, the gross loss; and the underwriters have no right to say that it shall be applied to anything else.

Decree for the libellant.