## THE TEXAS & PACIFIC RAILWAY CO. v. LEVI & BRO.

### SUPREME COURT, AUSTIN TERM, 1883.

*Cotton—Damage by Fire from Railway Locomotive—Negligence--Insurance.*—In a suit against a railway company for damage to cotton by fire, it is no defense that the owners of the cotton held policies of insurance on the cotton, which had been collected.

*Same.*—The storing of cotton in a yard contiguous to a railway track might not be a prudent act, and such question should be submitted to the jury.

*Measure of Damages.*—See opinion for rule of measure of damages applicable to the facts of this case.

Appeal from Dallas County.

The above suit was brought by appellees in Dallas district court, in 1880, to recover of appellant damages for the burning of certain cotton of appellees, in Dallas city, on the —— day of ——, A. D. 1879. Appellees alleged that their cotton was stored in their cotton yard, and was set on fire by defendant's train through defendant's carelessness.

Defendant pleaded the general denial, and specially, that if appellees' cotton was damaged by fire from defendant's engine, it was by reason of appellees' own negligence in stacking it on a public street and in a place of danger, thus exposing it to any chance spark that might escape from defendant's engine. And further, that said

cotton was insured by appellees in an insurance company, for fifteen hundred dollars, which sum had been paid them by the insurance company, and was the full amount of damage done to said cotton.

To the last plea, the court sustained special exceptions.

On the ―――― day of December, 1882, the case was tried by a jury, who returned a verdict for appellees for thirty-three hundred and sixty dollars, on which judgment was rendered.

*Wellborn, Leake & Henry* for appellants.

*Cowart, Barksdale & Robertson* for appellees.

Opinion by Stayton, J.

Appellant alleged as a defense that the appellees held policies of insurance on the cotton destroyed or injured, which had been collected, and that therefore it was not liable for such loss as the appellees might have sustained through its negligence, to the extent to which appellees had been reimbursed by the money collected upon such policies. The court sustained a demurrer to this defense, and this is assigned as error.

In this ruling there was no error. If the cotton had been fully paid for by insurance companies under policies which had been paid for by the appellees, it is not perceived how that could in any manner affect the liability of the appellant. Such payment would be the result of contract with which appellant has no privity, and to which in no respect had it made any contribution. If when the suit was brought the appellees had alleged such payment by insurance companies and had sought to recover for the use of such companies from the party whose wrongful act caused the loss, there would be reason in such a claim. "The insurer and the defendant are not joint tort-feasers or joint debtors so as to make the payment or satisfaction by the former operate to the benefit of the latter; nor is there any legal privity between the defendant and the insurer so as to give the former the right to avail itself of a payment by the latter.

The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff at his expense, and to the procurement of which the defendant was in no way contributory. * * * It cannot be said that the plaintiff took out the policy in the interest or behalf of the defendant; nor is there any legal principle which seems to require that it be ultimately ap-

propriated to the defendant's use and benefit." 43 Vermont, 538, Webe: v. Morris and Essex R. R. Co., 35 N. J., 413; Clark v Wilson, 103 Mass., 221; Hayward v. Cain, 105 Mass., 213; The Propeller Monticello v. Mollison, 17 Howard, 155; Dunham v. N. E. Mut. Ins. Co., 1 Lowell, 253; Mason v. Sainsburg, 3 Douglass, 61; Clark v. The Inhabitants, 2 Barn. & Cress, 254; Merrick v. Brainard, 38 Barbour, 589.

It is urged that the court erred in giving the following charge :

" You are instructed that plaintiffs had a right to place their cotton upon their cotton yard, and in so doing they would not on this account alone be guilty of negligence, although said cotton yard was in close proximity to defendant's road bed."

The cotton yard in which the cotton was alleged to have been burned, was in close proximity to the appellant's railway, and the evidence tends to show that, by the use of the most approved spark arresters it is impracticable to prevent entirely the escape of sparks from locomotives, unless the draught is so closed by the spark arrester as to prevent the generation of steam. If such be the case, a railway company is authorized to operate its engines with such protection against injury to others by fire, as can be given by the use of a high degree of care in the selection and use of such appliances as are approved by prudent and skillful persons, generally, engaged in such business, and are found to be best adapted to prevent the escape of fire by which others may be injured, even though as thus operated there may be danger of injury to others from fire escaping from locomotives. The business being authorized by law, no liability can be incurred for its exercise, unless there be a want of care in its prosecution, even though it be attended with some risk of injury to others. Such being the case a very high degree of care is requisite from those whose property is so situated with reference to a railway, that it is liable to injury even when due care is exercised by the railway company. It is true that a person owning or renting property near a railway, is entitled to use such property, but the greater the degree of exposure to injury from such proximity, the greater degree of care should be exercised by such person to prevent injury from causes for which a railway company will not be responsible, because impracticable to prevent them. What constitutes negligence sometimes may be a matter of law, but whether it exists in a given case is a question of fact, for the determination

of the jury, in all cases where there is a conflict of evidence, or the facts are disputed, and in no case submitted to a jury, where the facts are contested, or even where the evidence admitted to be true is of such character that, different, well organized minds might honestly arrive at different conclusions as to whether a person had or had not used due care, should a jury be instructed that an act

does or does not constitute negligence, but there are cases in which as matter of law, there being no controversy about the facts, in which a court would be authorized to instruct a jury that a given use of property was not negligence when considered with reference to a specific use to which contiguous property is lawfully appropriated; as for instance, if the appellees had been using the open yard in which the cotton was stored, for the purpose of storing railroad iron, stone, brick or other non-inflammable material, which, however, may be injured by fire, the court, with reference to an injury caused by sparks from a passing locomotive, might instruct a jury that such use was not negligence. If the same lot was used as a lumber yard, in which to store plank and other imflammable material, it would be a question of doubt, as to whether such use, reference being had to the use to which contiguous property was lawfully appropriated, was negligence or not. So in the use of a yard, contiguous to a railway track, for the purpose of storing baled cotton, which as matter of common knowledge is imflammable and easily ignited, when it is shown that contiguous property is lawfully used for a purpose from which it necessarily results that the cotton will be subjected to some danger from fire, it might be doubtful if the storing of baled cotton in such a place was a prudent act, and the question should be submitted to the jury. If cotton badly baled, or of which the baling had been cut, which seems to have been the case with the cotton injured, for the purpose of sampling it, and thus more exposed to fire than if the cotton was well baled, it would become more doubtful still if such use would be a prudent use, and hence, the greater necessity for leaving the entire question of negligence to the jury, under all the evidence. If we go a step further, and suppose a yard situated as was that of the appellees, to be used for the purpose of storing lint cotton, in no way compressed or covered, than which, but few things are more easily ignited, in such case a court certainly would not be authorized to instruct a

jury that such use would not be negligence, in face of the proof that locomotives were frequently passing within a few yards of it, and that with the utmost care consistent with the use of such machinery sparks would escape therefrom and might reach and fire the cotton. If we take an extreme case, and suppose that instead of using the yard in which the cotton was stored for that purpose, the appellees had used it for a powder magazine, in which, without any covering they left open kegs of gunpowder, then, if it be admitted that such was the case, and that locomotives were passing within a few yards of that place frequently, and that therefrom sparks would escape which might reach such explosive, even with the exercise of that care required by law of a railway company to prevent injury to contiguous property by fire from its locomotives, the court might instruct a jury that such use was not a prudent use; but if there was a controversy as to the facts, even in such a case the whole matter should be left to the jury.   Wharton on Negligence, 420 and citations.

The whole question as to whether the locomotives used by the appellant were such as the law requires them to use to prevent injury to others; whether its employees used the requisite degree of care, and whether the storing of the cotton in the condition the evidence showed it to be in a place of such close proximity to a railway track was or was not the exercise of proper care should have been left to the determination of the jury upon the evidence, untrammeled by any charge that an occupation of the lot for storing cotton was not negligence; for neither the court below, nor this court can declare as matter of law that such use was or was not negligence when taken in connection with all the evidence in the case.   The other parts of the charge upon the question of negligence of the respective parties was reasonably full; but we cannot say that the charge given may not have controlled the verdict.

The charge to the jury in reference to the character of appliances incumbent upon the appellant to use to prevent injury to others by fire is perhaps more exacting, than can be sustained.   Wharton on Negligence, 872; Thompson on Negligence, 154, 155,

The ordinary measure of damage for injury to property is the difference between the value of that damaged, before the damage was done and its value after the injury to it; and in so far as property is wholly destroyed, its value; and this at the place where the

injury occurs, unless injured by a person who has contracted to deliver it at a different place. 2 Sedgwick on Measure of Damages, 94, 487.

In this case, however, there would be some difficulty in applying the rule, for there is evidence tending to show that the property in its damaged condition could have found no market where it was, and that it could not be shipped to another market without repacking. In such case we are of the opinion that such expenses as were necessarily incurred in selecting the cotton which was injured from that which was not, but might still find a market as merchantable cotton, and separating the one from the other, and so repacking both qualities that the same could be sent to market were matters which might legitimately be looked to in estimating the damage sustained by the appellees, and that such necessary expense, and the difference in the value of the cotton before it was injured, and after thus separated and repacked, with interest on such difference would be the measure of damage, Winne v. The Illinois C. R. R. Co., 31 Iowa, 587; Street v. Laumier, 34 Mo., 469; and to this would the appellees be entitled if the injury resulted from the negligence of the appellant. For the errors indicated the judgment is reversed and the cause is remanded.