GLOBAL PETROTECH, INC., Plaintiff,

v.

ENGELHARD CORPORATION, Defendant and Third–Party Plaintiff,

v.

AIR CHINA INTERNATIONAL CORPORATION, *et al.,* Third–Party Defendants.

Civ. A. No. H–92–907.

U.S. District Court, S.D. Texas, Houston Division.

June 8, 1993.

Robert E. Meadows, Sewell & Riggs, Houston, TX, for plaintiff.

Don D. Martinson, Fannin, Harper & Martinson, Dallas, TX, · for defendant.

## MEMORANDUM

HUGHES, District Judge.

### 1. *Introduction.*

When a party to a commercial transaction insures itself against a casualty loss, and then the other party causes the loss by breaching the contract or committing a tort, can the defending party reduce the damages it owes by the insurance proceeds? Yes and no. While the public would benefit from a consistent, practical answer to the causes of action that arise in commercial transactions, the Texas courts have not allowed one, showing once again the deleterious effects of allowing tort law to creep into contractual relations.

### 2. *Background.*

These facts are to explain the background to this decision; they are not operative findings. Global contracted with Engelhard for the purchase of palladium chloride with specifications of form and purity. The goods were to be shipped directly to Global's client, an arm of the Chinese government. Global paid Engelhard in advance of the shipment.

Engelhard shipped the goods, but Global rejected them as nonconforming when China told it what had actually been delivered. China made arrangements to return the goods to Engelhard by shipping them to New York's Kennedy airport. Global arranged with another arm of China's government to insure the goods. Somewhere between the air carriage from China to the United States and the cargo storage at Kennedy, the goods vanished. China paid Global the insurance proceeds for the lost cargo. On the other hand, Engelhard has refused to return Global's payment for the goods, and it wants to take a credit for the insurance proceeds that Global has received from China.

### 3. *Contracts and Credit.*

Global's causes of action are for breach of contract and violation of the Texas Deceptive Trade Practices Act. Global relies on the collateral source rule. It states that if the insurance proceeds are obtained wholly apart from the underlying contract, those proceeds are not a credit against the damages caused by the tortious conduct. *See* Restatement (Second) of Torts § 920A (1965).

Under general contract law a party should not benefit more from a contract's breach than from its performance. *See* Restatement (Second) of Contracts § 347 cmt. e (1981). "The principle that a party's liability is not reduced by payments or other benefits received by the injured party from collateral sources is less compelling in the case of a breach of contract than in the case of a tort." *Id. See also Jones v. Red Arrow Heavy Hauling, Inc.*, 816 S.W.2d 134, 136 (Tex. App.—Beaumont 1991, writ denied). The insurance proceeds will count in reducing a damage award to Global based on the breach of contract claim. That is the *yes.*

### 4. *Contractual Torts and Credit.*

The contract logic should apply equally to the DTPA claim. While the DTPA is characterized as a species of tort, it is being used in this litigation in the context of a contractual dispute between two fully informed business entities. Texas does not see it this way. The collateral source rule applies to causes of action under the DTPA in Texas. *See Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

In 1980, in applying the relatively new trade practices statute, the Texas Supreme Court turned to an earlier decision on the

collateral source rule for guidance and found it controlling. *See Texas & Pacific Ry. Co. v. Levi & Bro.*, 59 Tex. 674 (1883). The earlier case was a pure tort; the broker's cotton, stored in the yards adjacent to railroad tracks, was destroyed by a fire caused by the negligence of the railroad. *Id.* There was no relationship between the broker and the railroad, contractual or otherwise. Yet the court jumped from the tortious context to the contractual context of a bailment for carriage in an express agreement and applied the tort version of the collateral source exclusion. *Brown*, 601 S.W.2d 931.

Additionally, in the later case, the plaintiff was an individual who hired a mover to ship his personal belongings, which may have a plausible relation to the full thrust of a "consumer" protection law; it was not a case where both parties to the transaction were sophisticated business entities. Under the DTPA, Global does fit the definition of a consumer. *See* Tex.Bus. & Com.Code Ann. § 17.45(4) (1987). This fact, however, does not change the essential contractual nature of this suit, and it further emphasizes the error of applying the collateral source rule to this transaction. Because this court must apply Texas law as the Texas courts have interpreted it, the insurance proceeds will not be applied to an award for Global under the DTPA claim. That is the *no.*

5. *Interest in the Goods.*

Finally, Engelhard argues that if the goods were nonconforming and rejected, Engelhard would maintain the risk of loss, and thus Global's only basis for insurable interest in the goods is under the Uniform Commercial Code, and its DTPA claim must also be interpreted in light of the UCC's bar to double recovery. *See* Tex.Bus. & Com.Code Ann. § 2.501 (1987). This argument would be far more persuasive if Engelhard had tendered the full payment made by Global. Once having made that payment, Global had an insurable interest apart from the commercial code. *See, e.g., Thompson v. Trinity Universal Ins. Co.*, 708 S.W.2d 45, 47 (Tex. App.—Tyler 1986, writ ref'd n.r.e.).