## PUBLIX THEATRES CORPORATION et al. v. POWELL.

### No. 4061.

Court of Civil Appeals of Texas. Texarkana.

Dec. 31, 1931.

Rehearing Denied Jan. 14, 1932.

Russell & Russell, of Dallas; Davidson, Blalock & Blalock, of Marshall, and Murphy W. Townsend and R. G. Scurry, both of Dallas, for plaintiff in error.

Scott, Casey & Hall and George Prendergast, all of Marshall, for defendant in error.

LEVY, J.

D. W. Powell, the owner of the Grand Theatre Building in Marshall, Tex., brought the suit against H. S. Cole and H. A. Cole, Mid-Texas Theatres, Inc., and Publix Theatres, Inc., to recover for the destruction by fire of the theater building and its equipment and the amount of the remaining five years of rent payable under the unexpired contract of the lease of the building. H. S. Cole and H. A. Cole were eliminated from the controversy by a judgment in their favor. A judgment was entered in favor of the plaintiff against the Mid-Texas Theatres, Inc., and the Publix Theatres, Inc., jointly and severally, based upon the verdict of the jury for $20,000, the value of the building, and $2,500 for the equipment and fixtures in the building, and for $25,000, upon the finding made by the court, for rent for the unexpired time payable under the lease contract, less a credit of $5,193 theretofore paid, aggregating $42,307, as the amount adjudged.

Prior to the year 1920 the plaintiff, D. W. Powell, had a long-term lease from the legal owners of a lot in block 35, fronting on North Washington avenue in the city of Marshall. He leased the lot for the purpose of operating a motion picture show in the building and improvements he was to erect thereupon. The usual equipments for operating a motion picture show were put in the building by the plaintiff, consisting of fixtures, stage curtains, seats, and other things to the aggregate value as found by the jury. The plaintiff afterwards in August, 1929, purchased outright the lot from the owners. In February, 1920, D. W. Powell and H. S. and H. A. Cole entered into a written lease by the terms of which, stated in substance, H. S. and H. A. Cole (1) were leased the building and all fixtures and equipment for uses of a motion picture show for the period of fifteen years beginning March 1, 1920, and (2) were to pay (a) to D. W. Powell $6,000 annual rental beginning March 1, 1920, evidenced by notes, and (b) all annual taxes, insurance premiums, and needed repairs, and (3) were not "to assign or sub-let the premises without the written consent of 'D. W. Powell." The following paragraphs of the lease are, as material, set out:

"Fifth. H. S. Cole and H. A. Cole agree at the termination of this lease to deliver said Grand Theatre and all property herein leased to D. W. Powell or his order in as good condition as when received, ordinary wear and tear and effect of time excepted.

"Sixth. The said H. S. Cole and H. A. Cole agree to keep said property insured in some solvent company for at least the sum of $20,000.00, loss, if any, payable to D. W. Powell or the person then holding said notes (rental) as their interest may appear. It is also agreed and understood that if this building be destroyed by fire that this lease will thereby terminate and the rent shall be returned to the said H. S. Cole and H. A. Cole pro rata."

Later, on July 31, 1920, with the consent of D. W. Powell, the lessees H. S. Cole, and H. A. Cole sold for a valuable consideration and executed a written assignment of the lease of February, 1920, to the Mid-Texas Theatres, Inc. H. S. and H. A. Cole then retired from the operation of the motion picture show. The annual rental of $6,000 was paid by the Mid-Texas Theatres to D. W. Powell on February 24, 1930.

There appears circumstances going to establish that in the fall of 1929 the Publix Theatres, Inc., assumed actual control and management of the Grand Theatre, and that the Mid-Texas Theatres, Inc., had surrendered possession to it. This was affirmatively denied by the evidence in behalf of the Publix Theatres, Inc. D. W. Powell did not consent or agree to the possession of the building and control and operation of the picture show therein by the Publix Theatres, Inc.

The theater building and all the fixtures and equipment were totally destroyed by fire on Sunday, March 9, 1930, at about 12 o'clock noon. The fire chief testified: "I remember the occasion of the Grand Theater catching on fire. I was called to the fire and I went there. When I first got there I broke in the front door and went in on the downstairs. It was four minutes to twelve o'clock, noon, on Sunday. As soon as I entered the downstairs I saw fire coming out somewhere over the top of the booth located where you buy tickets. The fire was as high up as the ceiling was above the booth. The smoke was so thick when I first got in there that I could tell that something was burning and plenty of it. The fire was coming down the ceiling beside the wall on the north side close to the stage where the curtain folds up. There were two fires that I saw in there that were not in any ways connected. There was one man that went in with me. * * * When I first went in there I played the hose on the hottest part of the fire that I saw, and as I felt pretty satisfied I had it out I saw that it had broken out near the northwest wall. The building had a tin ceiling, a light tin ceiling. The fire spread very rapidly, so rapidly that I was almost trapped. The fire whipped from the stage around over the stage and through the screen to the front door. As the screen fell the fire licked towards me and I had to leave the building. * * * I saw paint cans on the back of the stage and there were pasteboard boxes and excelsior and any kind of trash you mostly find. About thirty days before the fire I saw this trash there and mentioned it to the manager and directed him to get it away. I don't know whether he did that or not. * * * It was about three or four minutes after I got to the fire before the ceiling fell in."

The porter in the building testified: "I was working at the Grand Theater at the time it burned. They had another boy working at the time of the fire. As porter it was my duty to help clean up that place. The place had a stage and there was space behind that stage. Paper, pictures, posters and curtains were kept behind there. I was down there at the building at work Saturday before the house burned on Sunday morning. I cleaned up the place on Saturday before the fire. I had not cleaned up the place Saturday night before the fire. On Sunday morning I was there and I swept up the bottom floor but I did not sweep the galleries, I did not go up there, but I saw the galleries Saturday night and I noticed paper, paper bags, newspapers, popcorn bags, peanut shells and stuff up there. I know there was more of that stuff Saturday night than there was Saturday morning. On Saturday before the fire I didn't clean up that paper and bill posters that were back of the stage. * * * Me and the other boy were down there Sunday morning of the fire, but I don't know whether he went upstairs Sunday morning or not."

The manager of the theater testified, briefly stated: "As manager of the Grand Theater for the Mid-Texas Theatres, Incorporated, it was one of my duties to see that the building was kept clean and that the janitors kept it clean. I had two janitors and an assistant manager. The fire chief complained to me one time about paper on the back of the stage which I believe was thirty or sixty days before the fire. I had it cleaned up and the fire chief came back and looked at it. As to whether curtains and débris were allowed to accumulate in the attic, I will say that we had some scraps of lumber used in making the change to install sound equipment there once, but these things had all been removed and no curtains or things like that and no paper was up there at all. The porters were not supposed to clean up on Sunday, but to keep from having so much work to do on Mondays they sometimes would clean up on Sunday morning. * * * The fire occurred Sunday about noon. I had been at the theater that morning until about 11:30. The assistant manager was there with me. I was there getting out my weekly reports on business and putting in my payroll for the next week. The

lights were all cut off when I left. The main switch pulled in the box office and that cuts out all the current that goes into the building except that which goes into the operating room which is another circuit that carries a heavier load. I went from the building straight home and I received notice of the fire by telephone about twelve o'clock. I went to the fire and got there as soon as I could get there."

The case was submitted to the jury on special issues. The jury made answers to the special issues, in substance, as follows:

(1) At the time of the fire on March 9, 1930, the Publix Theatres, Inc., was in control of and operating the theater.

(2) The Publix Theatres, Inc., by its conduct had converted or taken over the theater and furnishings to its own use prior to the fire.

(3) The plaintiff did not give his consent for the Publix Theatres, Inc., to occupy and control the building and leased premises.

(4) The Mid-Texas Theatres, Inc., was not in control of and operating the theater at the time of the fire, but by its affirmative action and failure to observe proper care of the theater building, caused the building to take fire or be set on fire and destroyed.

(5) The Publix Theatres, Inc., while it was operating the theater, allowed trash and other inflammable material to accumulate in the theater building, and allowing trash and other inflammable material to accumulate in the building was negligence.

(6) That the negligence of the Publix Theatres, Inc., was the proximate cause of the building and equipment being destroyed by fire.

(7) The destruction of the building by fire was not the result of an unavoidable accident.

(8) The cash market value of the building at the date of its destruction by fire was $20,000.

(9) The cash market value of the equipment in the building at the time it was destroyed by fire was $2,500.

■ The appellants each predicate error on appeal upon the findings of the jury. It may not be said, we think, that, as a matter of pure law, there is insufficiency of evidence, as urged by appellant, to raise issues submitted and to warrant the jury in the findings made. There was shown circumstances pointing to the view that the Publix Theatres, Inc., was in control and operating the theater with the consent of the Mid-Texas Theatres, Inc., and had taken over the theater and its furnishing to its own use, and had "converted" or asserted control without consent of D. W. Powell, the lessor. The circumstances and inferences arising therefrom, all considered together, leave the existence or nonexistence of the facts to be established purely an issue for the jury to decide. And the same view arises out of the circumstances relating to the negligence vel non proximately causing the loss by fire. Although the proof in respect to negligence is slight, yet the verdict of the jury may not, as a matter of pure law, properly be set aside as without any evidence to support it. There is sufficient affirmative proof going to show accumulation of trash in the building such as would quickly catch fire and spread fire and that due care had not been used to avoid loss by fire. The countervailing evidence does not conclusively negative the want of due care. Negligence may be, as a rule, inferred from the circumstances of the particular case. The whole building here was shown to be in the control and possession of the defendants, jointly acting, and their servants, and the loss was such that in the usual course does not happen if proper care be used. There were no other sources of fire, and the circumstances conclusively show that the fire that destroyed the building originated in the building and spread over it, and that it was due to the want of care in the proper keeping of the building. It will be here observed that the fire must be held to be of negligent origin, and that the building was not, so far as the evidence shows, deliberately set fire to by any person. The Mid-Texas Theatres, Inc., as lessee of D. W. Powell, was not legally relieved of its obligation to the lessor to use due care in the keeping of the building because it had not been released from the lease. It had, as found, delivered over the control and management of the building without consent of the lessor and contrary to the provisions of the lease in that respect. Its responsibility because thereof exists as a joint tort-feasor with the Publix Theatres, Inc.

■ The appellants claim that it was error to allow, as an element of damages, the loss of the amount of the stipulated rent for the period of the unexpired term under the lease. In this case there was a termination of the lease by its terms by the destruction of the premises by fire. The contract of lease stipulated for a fixed sum payable for a definite period of time. The amount of loss by the wrongful termination of the lease through negligent destruction of the building was therefore ascertainable with certainty, being the stipulated amount of rental for the unexpired term of the lease contract. It is the rule that the plaintiff can recover the loss of the agreed rent of the premises when the rent is a certain subject of computation. 13 Tex. Jur. §§ 12, 114; 17 C. J. § 123, p. 798. In such case the plaintiff only recovers for the loss of what he would have gotten but for the negligent act of causing the destruction of the premises and thereby terminating the lease contract.

■ The appellants alleged, and offered to prove, but objection thereto was sustained,

in mitigation of damages and as showing a want of any damages suffered from the loss of the building, that policies of fire insurance on the building and equipment were payable to the plaintiff as the insured in the sum of $20,000, and such policies were collected from the insurance companies by the plaintiff. The lease contract with the Mid-Texas Theatres, Inc., provided for the payment of the premiums for such insurance as a part of the rent of the building, and were not voluntarily paid by such lessee for its own benefit. In such case no legal privity exists between the lessee and the insurance company which would give such lessee a right to avail itself, as a defense, of the payment of insurance to the insured lessor. 1 Sutherland on Damages (3d Ed.) § 158; 17 C. J. § 228, p. 929; 16 R. C. L. § 468, p. 959; Rwy. v. Levi, 59 Tex. 674; Dillon v. Hunt, 105 Mo. 154, 16 S. W. 516, 24 Am. St. Rep. 374; Rwy. v. Hicklin, 131 Ky. 624, 115 S. W. 752, 23 L. R. A. (N. S.) 870.

After having duly considered all the assignments of error as presented by the appellants, we have reached the conclusion that they should be overruled and the judgment of the trial court should be affirmed.