**TEXAS CO. v. GIBSON et al.**

**No. 2832.**

Court of Civil Appeals of Texas. Beaumont.
Nov. 26, 1935.

Rehearing Denied Dec. 18, 1935.

Wm. K. Hall, of Houston, and Davis, Avery & Wallace, of Center, for appellant.

E. B. Lewis, of Center, for appellees.

WALKER, Chief Justice.

This was a suit by appellees, Lois Gibson et vir., against appellant, the Texas Company, for the value of a filling station owned by them in the town of Joaquin, Shelby county, and which was destroyed by fire on the morning of June 17, 1932. The town of Joaquin has a population of about 600. This filling station was located on a corner lot in the business section of the town where the main highway through the town is intersected at right angles by another road. The gasoline pumps that served this station were situated about 12 feet from the road, supplied by underground tanks. A considerable traffic, both pedestrian and by vehicles, passed this corner daily and the pedestrians walked very near the pumps. That type of service pump would not draw all the gas from the storage tanks. The pumps belonged to appellant, and on the afternoon before the fire appellant removed the pumps, acting under the following clause of its written lease contract with appellees:

"(5)—Removal of Property. Lessee shall have the right at any time during the continuance of this lease or within thirty (30) days after its termination to sever and remove all fixtures, equipment and other property of lessee placed on said premises by lessee during the term of this or any previous lease, or any extension or renewal thereof."

Appellant did not notify appellees of its intention to remove its pumps and appellees did not know that they had been removed until after the fire. In taking out the pumps, appellant's agent left exposed the pipes that connected them with the underground tanks. It was the theory of

appellees' petition that gasoline escaped from the storage tanks through the exposed pipes, saturated the concrete surrounding the exposed pipes, and that one Bill Faulke, while standing near the exposed pipes, lighted a match, thereby causing the fire. The petition charged negligence against appellant in the following respects: (a) That appellant removed the pumps without notifying appellees and giving them an opportunity to protect their property, and (b) that appellant failed to use ordinary care in "stopping" or "closing" the pipes. The defendant's answer was by general denial, etc. The jury found the following facts: (a) Appellant removed the service pumps without notice to appellees; that this was negligence and a proximate cause of the destruction of the filling station; (b) appellant removed the pumps "without covering, stopping and plugging the pipes which led to the gasoline storage tank or tanks at said station"; that this was negligence, and a proximate cause of the destruction of the filling station; (c) appellant, after removing the pumps, "left the pipes leading to the storage tank or tanks open and exposed"; that this was negligence, and a proximate cause of the destruction of the filling station; (d) the value of the filling station, immediately before the fire, was $1,050, and its value "immediately after the fire" was $50; (e) Bill Faulke "struck a match which ignited the filling station in question"; his act in striking the match was not the proximate cause of the fire which destroyed the building; his act in striking the match was not "a new and independent cause" of the fire which destroyed the building.

Appellant's first contention is that, under the clause of its written contract copied above, it had the absolute right to remove its tanks without notice to appellees and that, as a matter of law, on the facts of this case it was not guilty of negligence in removing them and leaving the pipes exposed. This contention is denied. Since the pumps could not take all the gasoline from the storage tanks, appellant was bound to know that gasoline was both volatile and highly explosive, and that, in removing the tanks without notice to appellees, it was exposing the property to a risk of fire. Appellant was appellees' tenant. In using the property under its tenancy contract, the law required it to exercise ordinary care for the preservation of the property, and, in abandoning the property at the expiration of its tenancy contract, appellant was bound by law not to expose the property to unreasonable risks of destruction. It was for the jury to say whether or not, on the facts summarized above, appellant rested under the duty of notifying appellees that it was removing the pumps and that it was leaving the pipes exposed. In Commercial Union Assurance Co. v. Gulf Refining Co. (Tex.Civ.App.) 174 S.W. 874, the court ruled that leaving exposed open gasoline containers on the dock was negligence. In McGuffey v. Pierce-Fordyce Oil Ass'n (Tex.Civ.App.) 211 S.W. 335, it was held 'hat gasoline is highly explosive and that it may constitute a nuisance when placed upon property situated in a thickly settled portion of the town and that negligence may flow from such an act.

Appellant contends also that the evidence did not raise against it the issue of proximate cause in that (a) the fire did not originate from the exposed pipes, and (b) the fire was proximately caused "by the independent intervening act of a trespasser, Bill Faulke." The following quotation from the testimony of Bill Faulke gives the story of the fire, questions and answers reduced to narrative:

"My name is Bill Faulke. I live in Joaquin. I have resided in Joaquin since 1929. My business or occupation is filling station operator. Prior to going to Joaquin I lived at Center; I worked for the Martin Filling Station here in Center and the Center Garage. I remember the occasion of the filling station and building that was operated by Mr. Daw burning in 1932 at Joaquin. I do not remember what day of the week it was; it was night, somewhere near two o'clock. That day I had been all over town, like I was in the habit of doing then. I didn't have any occupation then,—around over town. I made a trip that night; I went to Connell's Ferry that night somewhere near sundown, between sundown and dark, fishing. Tom Mitchell went with me. I don't know how long we stayed out there on the river, we didn't have any time with us; we supposed it was near midnight when we started in. When we came back there was no one else with us, except me and Mr. Mitchell. When we got back to Joaquin the car stopped between the Texaco Filling Station and the bank. The Texaco Filling Station is the station of Mrs. Gibson, which was operated by Mr. Daw. That is the one I have ref-

erence to. When we came back from Connell's Ferry we were riding in my car. I drove from Connell's Ferry back to Joaquin. When I stopped the car between the bank and the filling station Mr. Mitchell got out—I got out. Mr. Mitchell got out —and I don't know whether he got out or just slipped over. You see, it was in a whoopee, and all we had to do was just slip off and on. The car later drove away from where it stopped there. When it drove away from there I had got out; Mr. Mitchell took the car. I was supposed to wait for him thirty minues. Mr. Mitchell went toward Logansport. I walked over toward the filling station to wait for him. * * *

"After Mr. Crawford passed and got up somewhere near the ice house, while I was dodging him, I had made a smoke—I made a cigarette; and walked in front there and was watching him and I just got a match— I will show you how I did it. If you strike a match in the dark, and don't want anybody to see you, you would do it quick and quick as you could light you would throw it down and try to put it out, or something. When I struck the match I was standing near the door of the filling station. When I struck the match I lit my cigarette as quick as I could and threw it down. When I lit the match and threw it down a blaze came up from the floor it looked like—it must have enveloped the place there—it must have been four or five feet wide, and right over those tanks where they had been taken up; I got away as fast as I could. I did not know whether there was any gasoline in the tanks or not. I noticed then that the service pumps had been taken away."

On this testimony the fire started immediately over the exposed pipes. Because of the nature of gasoline, it was for the jury to say whether or not the gasoline in the concrete escaped from the exposed underground tanks.

The fire resulted as a natural sequence from the negligence found against appellant by the jury. True, the act of Bill Faulke in lighting his match was a new intervening agency, but it did not break the causal connection of appellant's negligence. This filling station was in a small town, situated on one of the most prominent corners of the town. The public had access to it day and night. As a fact issue, appellant should have foreseen that some member of the public would travel near or across the exposed apron of the filling station; it should have foreseen that members of the public would use the filling station as a meeting point. This fire resulted from a very common act—a man waiting at the filling station for his friend and lighting a cigarette while waiting for his friend. We think Fort Worth Gas Co. v. Cooper (Tex.Civ.App.) 241 S.W. 282, 284, is in point. In that case the court said:

"It could not be said that there was no proximate causal relation between the appellant's negligent act and the appellee's injury. The bare fact or circumstance that the flame or fire from the cooking stove lighted by appellee operated upon the accumulated gas confined in the closet and produced the combustion could not, we think, be held, as a matter of law, in the facts of this case, as relieving appellant of liability for its negligence in suffering its gas to accumulate in the closet. It is not required under the law, in order to determine the efficient or proximate cause of any injury, that in every case every fact or circumstance independent of the original negligence shall be excluded. In certain facts and under certain conditions the alleged negligence may legally be regarded as the proximate cause of the injury, regardless of some intervening agency."

See, also, Ratliff v. Nau (Tex.Civ.App.) 36 S.W.(2d) 254; Atex Construction Co. v. Farrow (Tex.Civ.App.) 71 S.W.(2d) 323. The cases cited by appellant in support of its proposition of want of proximate cause are clearly distinguishable from the facts of this case.

■ Appellant's bill of exception No. 1, with the court's qualification thereto, is as follows:

"Be it remembered that on the trial of this cause and while intervenor's counsel, the Honorable W. W. Lane, was arguing the case to the jury, he said:

"'Now then, what does the defendant say? The first thing, of course, they say, 'taint so. None of it. We deny it all. We say it didn't happen, but if you find that happened, if you find that caused the fire, and if you find that Bill Faulke threw the match down there, and which they know you will find, and know you are, then they slip you a few little defensive issues in there along their line, which are issues Numbers Thirteen and Fourteen. If you don't listen to anything else, I say, I want

you to consider closely issues Thirteen and Fourteen in this case.' * * *

" 'And these two issues, if you understand them, won't give you any trouble. I will discuss them first, because I believe they will give you trouble—not because you do not know the facts, but because they will mislead you, and you will arrive at a verdict you do not want to arrive at, and you will answer them incorrectly. Let's see what they are.' * * *

" 'The last two issues in this case, above all things, I say should be answered "No," because that is their contention. They want you to say "yes." That is what they are asking you to do, because that is their contention in the case'. * * *

" 'Let's get to issue Fourteen, another on that, and liable to mislead you, if you don't read it closely. It is not what it sounds like, either. That is the trick in the case'. * * *

" 'I say, gentlemen, watch those two issues closely, above all things. That is the trick in the case. They don't doubt how you are going to answer the others. They are not hoping for anything. Of course, they are going to disagree—I know that—but those two issues there, I say, should be answered "no," because if you understand them, I know you will answer them that way, and do not be misled by the way they sound, or by the way Mr. Avery argued.' * * *

" 'That gets us down to these last two issues, again. I say that under the light of the testimony in this case, that all of the issues where there is a question of "yes" and "no," keep this in mind—under our contention in the case, in all of the issues that are submitted to you where they call for an answer of "yes" or "no," that all of them should be answered "yes," except two, and that is the last two, because we disagree with them there.' * * *

" 'Gentlemen, go out and answer all of the questions "yes" except the last two, and you won't find that anybody lied. I don't believe that you will say that Bill Faulke lied, because it is not in this. case. Do your duty, and when you do, we won't have any complaint.'

"Be it further remembered that the Honorable E. B. Lewis, attorney for plaintiffs, in his closing argument to the jury, said:

" 'You render the verdict you think you should in this case, and when you do, we feel you will answer all of the issues "yes," except the last two, and answer those "No." ' To all of which argument by the said Honorable W. W. Lane and Honorable E. B. Lewis, counsel for intervener and plaintiffs respectively, defendant duly objected and asked the Court to instruct the jury not to consider same, which objections and motions were by the Court overruled, to which action of the Court defendant then and there excepted and here now tenders its Bill of Exception No. 1 and asks that same be examined, allowed, and approved.
"Davis, Avery & Wallace,
"Wm. K. Hall,
"Attorneys for Defendant, The Texas Company.

"The foregoing Bill of Exception No. 1, having been presented to opposing counsel in the manner and within the time required by law and having been approved and agreed to by such opposing counsel and having been examined by the court and found correct, is accordingly by the Court hereby allowed and approved, with the qualification that after Honorable E. B. Lewis, attorney for plaintiffs, had commenced his argument, but before he had made any of the remarks objected to herein, Honorable Wm. K. Hall, one of the defendant's attorneys approached the bench, and stated to the court in substance that he anticipated that adverse counsel would in their argument make improper, prejudicial and inflammatory statements; that he was having the court reporter to take their arguments in shorthand, and asked leave to take exception to any such argument without interrupting counsel, whereupon the court interrupted the argument of Mr. Lewis and stated:

" 'I call your attention to the fact that defendant's counsel are having your argument transcribed in shorthand, and that they have asked leave of the court to take exception to any argument that they deem exceptionable, that is subject to exception, without interrupting you'; to which Mr. Lewis replied, 'Yes, sir'; when the Court further stated:

" 'Just call your attention to it'; to which Mr. Lewis further replied:

" 'Yes, sir, and if it is permissible to Your Honor, I will tell this jury I will argue this case as fairly as possible, regardless of whether the Texas Company pays to have my argument taken or not'; when Mr. Hall said:

" 'We take an exception to that'; when Mr. Lewis further stated: 'I will argue as fairly as I can, regardless of whether they pay him to take down everything I say, or not, I will argue just as fair as whether anyone would remember in three minutes what I said'.

"Thereafter the argument complained of was made by the said Honorable W. W. Lane and Honorable E. B. Lewis, and the making of same was duly complained of by the defendant in its motion for new trial, which was overruled, and the defendant duly excepted.

"T. O. Davis, Judge Presiding."

The two issues referred to in this argument were those summarized in subdivision (e) of the jury's verdict, as stated above. The points made against this argument are (a) that these issues were tricky, and were tricks of the defendant, (b) that the argument advised the jury how to answer these questions so as to give a verdict to appellees, and (c) the argument was an open appeal to the prejudice of the jury. There is no direct statement in this argument to the effect that to find for the appellees the jury must answer these questions either "Yes" or "No." From the argument, the jury could have drawn an inference as to the effect of their answers, as an intelligent jury can in the general argument of counsel. When a lawyer asks a jury to answer "Yes" or "No" to a question, as he has the right to do, an intelligent juror would conclude that the answer requested would be favorable to the lawyer making the argument. We think that is a reasonable construction of the argument now complained of. Counsel should not have referred to these issues as "the trick in the case." But we do not think that this argument constituted error on this point. Clearly, in view of the evidence, appellant was not prejudiced and the argument did not inflame the jury, in assessing damages against it. We quote from appellees' brief the following summary of the evidence on the issue of value of the filling station:

"On the question of whether or not the jury had been influenced by prejudicial and highly inflammatory argument we deem material the fact that plaintiffs alleged their damages at $1975.25, testimony of C. E. Barron that it would cost $1706.50 to replace the building, testimony of C. O. Gibson that cash market value of the same was $2,000.00 to $2,200.00; the evidence of defendant by witness Guy King that he built the station himself and was out $750.-00 or $800.00 or better for mostly material, that lot was worth about $500.00 and shortly after he sold the same with $500.00 in equipment for $3500.00, that same sold to plaintiffs for $2800.00 in cash."

Appellant also complains of the following additional argument by counsel:

"They accuse us of astute argument, and things of that kind. I wish to call your attention, especially in view of my first argument, of the great power of the defendant in this case. They represent a client, and will you notice that the Court Reporter, every time that Mr. Lane made a speech, and every time I make a speech, it is taken down. Just a proposition of submitting it to you, and when this boy and his wife—a country boy, as you know Claude Gibson, and the facts in this case show when he comes in here and represents his wife against this powerful corporation, then we are accused of having a man, that because he swears the facts as he did and as he saw them, they say that Bill lied.

" * * * You go out and render that verdict that you think is right and fair to a fellow man, and, as Mr. Davis said, because that this is a great corporation, and because it is a corporation with big money, and powerful money behind it, that can employ very able counsel, don't render a verdict against them because they have got all of the money behind them, and because they are one of the biggest corporations in the country. Don't do that; and don't render a verdict in favor of my client because he is one of the boys here, and has no money, as the proof shows."

This bill has the same general qualification as bill No. 1, with the following addition thereto:

"And with the further qualification that in his voir dire examination of the jury Honorable W. I. Davis asked the prospective jurors if they would, in considering the case and arriving at their verdict, consider the same and render the same character of verdict that they would if the parties to the suit were individuals, one suing the other, instead of individuals as plaintiffs suing a corporation; and in his argument, preceding the argument complained of in this bill, Mr. Davis had called the jury's attention to their statements to him on their voir dire examination, and has asked that, in passing on the case, they

consider it just as they would a suit between individuals as plaintiffs and individuals as defendants."

On its proposition that the argument complained of by bill No. 2 constitutes error, appellant has cited us to Woodard v. Texas & P. Ry. Co. (Tex.Com.App.) 86 S.W.(2d) 38, 40, from which we quote as follows:

"Defendant complains of certain statements made by counsel for plaintiff in his closing argument to the jury. As disclosed by the bills of exception, the language objected to was as follows:

" 'This railway corporation has carried on a lot of propaganda in Louisiana, and has poisoned the minds of the jurors there so that the ·plaintiff could not obtain a fair trial in Louisiana, and that is the reason why the case was not brought in the State of Louisiana.

" 'You have heard these lawyers, these railway hirelings, rail about jurors, but if they had their way about it, they would do away with jury trials and the jury system altogether. I tell you, gentlemen, that this defendant, this great and wealthy railroad corporation, is drunk on power.

" 'This suit was not brought in the State of Louisiana because of the wealth and power of this railway corporation, where, by reason of its wealth and power, the plaintiff could not get a fair trial against a corporation in Louisiana.'

"In each bill of exception there was a qualification to the effect that counsel for the defendant had previously commented on the fact that plaintiff lives in Alexandria, La., that said city had good lawyers and good courts, and asked the jury why the plaintiff had come 200 miles from home to bring his suit in Marion county, and also asked the jury if they would want to bring a lawsuit in the county where they were unknown instead of bringing it in their home county and among friends.

"As it was disclosed by the evidence that plaintiff resided in Alexandria, La., it was proper for counsel for the railway company to comment upon the fact that his suit had been brought in Marion county rather than in Alexandria, La. In response to such argument, we do not think counsel was justified in referring to the wealth and power of the railroad company and making the statement that by reason of its wealth and power plaintiff could not get a fair trial in Louisiana. But even if

it were conceded that the statements as to why plaintiff could not get a fair trial in Louisiana were justified, it is obvious that the other statements had no relation whatever to the comment made by counsel for defendant, and on their face are manifestly improper and inexcusable. It is unnecessary to cite authority to support the conclusion that such inflammatory and unjustified remarks are reversible error under the rule now enforced by this court. Attorneys must come to understand that so far as this court may have jurisdiction to do so, the rules with reference to the orderly, fair, and impartial trial of causes, as regards argument of counsel, conduct of jurors, and the substantial methods of procedure, will be consistently enforced. This is true, notwithstanding overzealous counsel may regard such rules as 'idiotic' and as 'nonsense.' If attorneys persist in seeking to obtain verdicts of jurors by resorting to arguments such as is hereinabove set out, when they may safely intrust their causes to the jury upon the evidence and the charge of the court, commented upon in a fair and reasonable manner, they have no one to blame but themselves when a reversal is ordered by this court."

In this opinion the Supreme Court has announced, with great clearness, and in most emphatic language, the law of improper argument. When such argument is unprovoked, it is clearly the law that it constitutes error, and the case must be reversed. But the facts and law of the Woodard Case do not control this case. In qualifying the jury, appellant's counsel stressed the point that plaintiffs were private individuals and the defendant a corporation. The argument complained of shows on its face that it was in reply to a request made to the jury by appellant's counsel not to consider the fact, in rendering its verdict, that appellant was a great corporation; and in this argument appellees' counsel joined appellant in that request, and asked the jury not to render a verdict for appellees because one of the appellees was a country boy and appellant was a great corporation. Clearly, it seems to us that this very argument was provoked by counsel for appellant and was nothing more than a request that the jury follow literally the advice of appellant's counsel.

We overrule appellant's assignment that the findings of the jury on the issues of negligence and proximate cause are against the great weight and preponderance of the

testimony. The jury accepted Bill Faulke's version of how the fire occurred. Appellant had the testimony of a witness who contradicted, in the main, Faulke's version of the fire. The credibility of these two witnesses was for the jury.

The judgment of the lower court is in all things affirmed.