**WICHITA CITY LINES, Inc., Appellant,**

v.

**Ray PUCKETT et al., Appellees.**

No. 15689.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 17, 1956.

Rehearing Denied March 30, 1956.

Lloyd E. Boas,. St. Louis, Mo., Jones, Parish & Fillmore, McDonald & Anderson and Geo. W. Anderson, Wichita Falls, Looney, Clark & Moorehead, Everett L. Looney and R. Dean Moorehead, Austin, for appellant.

William A. Rembert, Jr., Dallas, Bullington, Humphrey, Humphrey & Fillmore, and Lee Humphrey, Wichita Falls, for appellees.

MASSEY, Chief Justice.

From a judgment for the plaintiff. landlord in a suit for damages because of loss resulting from fire caused through the negligence of his tenant, the defendant, the tenant appealed.

Judgment affirmed.

Ray Puckett owned a building in the City of Wichita Falls,. Texas. He contracted with and leased this building to the Wichita City Lines, Inc., a bus transportation company.. Paragraph 4 of the lease read as follows: "Lessor agrees to carry his own insurance against loss by fire, etc. on the entire building." By other paragraphs of the lease Puckett, as lessor, agreed that in the event of fire, etc., causing damage to the building he would restore the building by repairing it if such could be done through repairs, whereupon the lease would continue subject to a deduction of rent during the period in which the building was not usable. It was also provided in the event. of fire that should lessor Puckett deem the building unfit for occupancy, or should he decide against repair, choosing instead. to remodel or rebuild, he would be entitled to terminate the lease.

Puckett secured fire insurance on the building and contents belonging to him. Two companies carried the risk of such insurance. They were the Millers Mutual Fire Insurance Company of Texas, and Firemen's Insurance Company, a corporation.

On date of March 17, 1952, at about 1:15 o'clock in the morning, the building in question was extensively damaged by

fire. As result thereof Puckett was paid the sum of $31,983.73 by the Millers Mutual Fire Insurance Company and $2,645.67 by the Firemen's Insurance Company. This made a total amount of $34,629.40 in insurance benefits paid to Puckett because of loss and damage caused to his building and personal property by fire, under the insurance contracts he had with these two Insurance Companies.

■ The Companies, upon making payment for the loss and damage to Puckett, became subrogated under principles of equity to any right of action theretofore existing in Puckett against any third person responsible for such loss and damage. 39 Tex.Jur., p. 777, "Subrogation", sec. 20, "Insurers". Furthermore, Puckett assigned such right of action to these Companies as part and parcel of his contracts of settlement with them. 5 Tex.Jur., p. 18, "Assignments", sec. 16, "Claims Arising out of Torts.—In General". Further, irrespective of any necessity therefor, Puckett expressly conferred upon said Companies the right and power to file and prosecute a damage suit in his name against third parties responsible in tort for the loss and damage to his building and his personal property.

Thereafter these Companies brought suit in Puckett's name against the Wichita City Lines, Inc., Albert T. Ferguson, its employee, and The Texas Company, alleging that the loss and damage by fire sustained by Puckett was the result of the defendants' negligence. There was one trial which resulted in a mistrial. Thereafter Ferguson was dropped as a party defendant. There is some question as to whether The Texas Company was properly retained as a defendant for purposes of the second trial, and some question about whether it is before us on this appeal. However, in view of our disposition the question is immaterial and will not be discussed. We are of the opinion that the case may be considered as one wherein the Insurance Companies, proceeding in the name of Puckett, are the plaintiffs and the Wichita City Lines, Inc., is the defendant.

We are further of the opinion that the issues involved would be more simply considered as between Puckett and the Wichita City Lines, Inc., and hereafter when we term the parties as plaintiff and defendant we mean in the first instance Puckett and his original cause of action, and in the second instance the Wichita City Lines, Inc.

■ Elaborating upon our reasons for so considering the subrogation and assignment questions, it is noted that the record clearly reflects that at all material times the defendant knew of the subrogations and assignments which were made and contracted between Puckett and the Insurance Companies, was informed as to just what part of Puckett's original cause of action against it had been subrogated and/or assigned to said Companies, etc., before there had ever been any settlement of any kind entered into between the defendant and Puckett. Therefore, since the judgment entered was in favor of the two Companies, rather than in favor of Puckett, and exactly in the amount as to each Company as the settlement paid by each to Puckett, defendant is not in position to claim any prejudice for it is of no concern to the defendant who shall receive the damages to be paid in settlement of its liability so long as it is not thereafter exposed to any further claim upon the original cause of action. With the knowledge defendant had of the ownership of the cause of action he could not, of course, claim to have settled any part of it with a person known to have parted with the title to it. The Companies do not contend that they should recover any more in damages through the theory that they were assigned more of Puckett's original cause of action than was received through subrogation. Puckett was expressly mentioned in the judgment, along with the provision that he take nothing individually or in addition to the amount awarded to the Insurance Companies. In view of our affirmance of the judgment entered, the defendant, upon payment of the judgment, will have extinguished all of its liability, and for an amount which certainly does not exceed the amount estab-

lished against it through the verdict of the jury. See Fort Worth & Denver Ry. Co. v. Ferguson, Tex.Civ.App. Fort Worth, 1953, 261 S.W.2d 874, writ dis. w. o. j.

In the pleadings upon which the case went to trial plaintiff alleged that the defendant, through its agent, servant and employee Ferguson, acting within the scope and course of his employment, was negligent in transferring gasoline from a tank truck into an underground storage tank without keeping a proper watch over the operation. Plaintiff further alleged that the defendant was negligent in having and keeping more than 250 gallons of gasoline in the building upon the occasion in question, and was negligent in using a filler pipe located within the building to fill the underground storage tank. Said acts of negligence were also alleged to have constituted the proximate cause of the fire and damage therefrom resulting. Special issues were submitted to the jury upon each ground of negligence so plead, and the jury found affirmatively in its answer to each, also finding such negligence to have constituted the proximate cause. There were other grounds of negligence plead but not submitted, of which we need take no notice on the appeal. Plaintiff also proceeded on the theory of res ipsa loquitur, pleading accordingly, and in answer to issues submitted to it thereon the jury found that the fire damage occurred by reason of "negligence on the part of the Defendant, Wichita City Lines, Inc., or its employee, Albert T. Ferguson", and that such negligence was a proximate cause of the damage in question.

Upon the matter of damages, the jury found the plaintiff's building and lot to have had the reasonable cash market value of $70,000 immediately before the fire occurred and the reasonable cash market value of $40,000 immediately thereafter, and the reasonable cash market value of plaintiff's personal property located in the building to have been $10,000 immediately before the fire occurred and $3,000 immediately thereafter.

It was indisputably established by the evidence that when the plaintiff leased the building to the defendant in 1951 there was an underground gasoline storage tank of 280 gallon capacity located on or under the building near the alley entrance. The filler pipe to this underground tank was located on the inside of the building, contrary to provisions of an ordinance of the City of Wichita Falls. As a part of the use of the building, the defendant intended to and did use the same to store its buses at night. It intended to and did use the underground storage tank to service the buses stored therein. The filling of such storage tank, except during daylight hours, was contrary to provisions of a city ordinance. The having or keeping of more than 250 gallons of gasoline in a single room, or in contiguous rooms, occupied by one person, firm or corporation, was contrary to provisions of city ordinance. The defendant needed more than the 280 gallon capacity of the underground tank on week ends, and in view thereof it had arrangements with its supplier, The Texas Company, to park a tank truck containing 678 gallons of gasoline inside the building near the filler pipe just after noon on Saturdays and return for it on Monday mornings. By using a filler hose from a tank on the truck, extending to the filler pipe just inside the building, the defendant could fill its underground tank as necessary to the servicing of its buses. All the gasoline put into the buses during the course of servicing them was by gasoline pumped out of the underground storage tank. It was the custom of the defendant to so transfer gasoline from The Texas Company truck into the underground tank at night as well as in the daytime when more gasoline was needed in the tank. It was while the defendant's employee, Ferguson, was making such a transfer at about 1:30 o'clock in the morning, under electric light during the nighttime, that the gas fumes ignited, resulting in a holocaust of intensity sufficient to substantially destroy the building. So far as is known Ferguson was the only person at the premises at the time of the fire. He was some distance from the point where the gasoline was draining from the truck into the underground storage tank, engaging in activity other than

watching the transfer of gasoline, when he heard a sound "just like a big wind". Upon looking back toward the rear of the building where the gasoline transfer was being effected as the result of the noise drawing his attention, he saw that the premises were on fire "everywhere in the back". It is thus seen that there was no one who observed just what it was that ignited the fumes of gasoline, resulting in a fire of sufficient size and intensity to destroy the building. There was evidence sufficient to demonstrate that nothing in the part of the building first discovered afire, other than the gasoline, could have produced a condition which would have been sufficient, without the fumes therefrom contributing, to have enabled a fire to develop to a degree and intensity sufficient to materially damage the building or its contents.

Of course, the situation was such that after the gasoline fumes became ignited there was no way to stop the flow of the liquid from The Texas Company truck out through the filler hose. It was some time before the fire department of the City brought the fire under control, by which time the plaintiff's building was what is generally termed a "total loss", and other nearby premises materially damaged.

■ The defendant contends on the appeal that the contract of lease which was in effect at the time of the fire was subject to construction as to its meaning. Defendant claims that a proper construction of the language could be made so as to consider that it provided that "Lessor agrees to carry insurance against his own loss by fire, etc., on the entire building for the mutual benefit of both parties". If defendant is wrong then it would be in no better position than a stranger in so far as its tort liability is concerned and it would be liable to the plaintiff if it negligently damaged the leased premises. We do not perceive in defendant's pleadings where it ever asserted that the lease provisions were ambiguous. Neither do we perceive any ambiguity. Since the obligations stated to be assumed by the de-

fendant in the contract do not demonstrate any want of any correlative obligation on the part of the plaintiff, we could not supply any agreement on the part of the plaintiff by an implication which would enable us to hold that plaintiff had agreed to purchase insurance for defendant's benefit. 10 Tex.Jur., p. 319, "Contracts", sec. 184, "When Provisions will be Implied". Though we have the duty, in construing the contract, to ascertain and give effect to the intention of the parties, we are required to ascertain such intention from the parties' own language as expressed in the contract, provided that such intention is not in conflict with the rules of law. 10 Tex.Jur., p. 272, "Contracts", sec. 159, "Intention of Parties". The language itself is not ambiguous and certainly the language wherein the plaintiff promised to "carry his own insurance against loss" could have been inserted in the contract for a purpose other than that of relieving the defendant of any tort liability should such a loss occur through its fault or negligence. Since this is true, and since there does not appear to be any other circumstance which would entitle a court of law to open the door to the reception of extraneous evidence upon the matter of the intent of the parties, or otherwise to depart from a construction which would give the words which were used their ordinary and commonly accepted meaning, we are of the opinion that in order to construe the contract so as to accord with the contention of the defendant would entail the addition of a provision under the guise of construction. This we cannot do. 10 Tex. Jur., p. 292, "Contracts", sec. 168, "Surrounding Circumstances". It follows that the trial court did not err when it sustained exceptions to defendant's pleadings and to its evidence bearing upon the intentions of the parties relative to beneficial interests in the insurance provided to be secured by the plaintiff.

■ As previously noted the plaintiff obtained a submission of his case to the jury both under specific acts of negligence and under res ipsa loquitur. A case was

plead and proved by plaintiff under the latter as well as the former theory. He obtained favorable jury findings under both theories. Under the evidence in the case plaintiff was entitled to this form of submission, neither theory inhibiting the other and the case being one wherein the cause of the fire was not indisputably known or established. Dallas Railway & Terminal Co. v. Clayton, Tex.Civ.App. Dallas 1954, 274 S.W.2d 422, writ ref., n. r. e., and the authorities there cited. Of course, the plaintiff's pleadings advancing the theory of res ipsa loquitur were not subject to the exception thereto taken by defendant.

■ The defendant does not, nor could it, seriously contend that in connection with its own acts and omissions, and those of its employee Ferguson, there was any want in the proof of negligence. It does strenuously contend that none of said acts and omissions supported any finding of proximate cause in connection therewith. It is true that the record is silent upon the matter of the exact source or cause of the ignition of the gasoline fumes, and such remains a matter of speculation and surmise. But there is no question but what the instrumentality of ignition, coupled with the presence of the fumes of gasoline, resulted in a fire of degree and intensity sufficient to cause the loss and damage complained of. The question of proximate cause was most certainly raised for the jury's determination in connection with Ferguson's negligence in failing to keep watch as he transferred the gasoline, and the same thing would be true as to the use of a filler pipe located within the building and leading to underground tanks. Texas Co. v. Gibson, Tex.Civ.App. Beaumont 1935, 88 S.W.2d 757, reversed on other grounds in 131 Tex. 598, 116 S.W.2d 686, in the course of which the Commission of Appeals saw fit to state that it was in accord with the holding applicable to the instant question. Proximate cause being raised in such respects, we do not need to nor do we consider whether the evidence raised an issue of fact, negligence, or proximate cause in connection with defendant's alleged storing of more than 250 gallons of gasoline in the building contrary to city ordinance.

■ Issues under the res ipsa loquitur theory were raised under the circumstances and the jury findings thereunder found adequate support. Publix Theatres Corporation v. Powell, Tex.Civ.App. Texarkana 1931, 44 S.W.2d 1053, reversed on other grounds at 123 Tex. 304, 71 S.W.2d 237.

We have examined the statement of facts in the course of inquiry to determine if the jury's findings upon the damage issues were supported by the evidence. There is no assignment based upon the question of the sufficiency of the pleadings. We are of the opinion that the issues and the findings returned thereon find adequate support in the evidence.

The defendant pleaded and alleged that the plaintiff had leased the building to it with the filler pipe to the underground storage tank located inside the building, that plaintiff himself had there located and constructed such filler pipe without having obtained a special permit to do so from the City's fire marshal, and that plaintiff was contributorily negligent in said respects and in leasing his building to the defendant in an unsafe condition. Defendant contends that the defense of contributory negligence should have been submitted to the jury. Its specially requested issues relative thereto were refused.

■ From the ordinances of the City of Wichita Falls, which appear in the record, it may be observed that the use of a filler pipe located as was the one in the instant case was an ordinance violation. In the body of the lease it was provided that the defendant should "promptly execute and fulfill all the Ordinances of the City of Wichita Falls, Texas, applicable to said premises * * *", and that it accepted "said premises as sutiable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and waives defects therein and agrees to hold the lessor harmless from all claims for any such damage,

\* \* \*" It was the use of the filler pipe which played such an important part in the fire which took place. A prior or remote cause of an event cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. The action of leasing the premises by the plaintiff, considered as connected with the filler pipe and its location, if it could be considered as a cause at all, would be too remote to constitute a proximate cause. Therefore, the trial court did not err in refusing to submit a special issue to the jury based thereon. See principle announced and cases cited in Phoenix Refining Co. v. Tips, Tex.Com.App. 1935, 125 Tex. 69, 81 S.W.2d 60.

■ During the course of the selection of the jury, one of the members of the panel stated that he could not, in his own opinion, give the defendant a fair trial if selected as a juror for the reason that defendant kept in its employ a man who would not pay an honest grocery bill. We do not believe that such comment on the part of the juror was such error as was reasonably calculated to cause and probably did cause the return of an erroneous verdict. Texas Rules of Civil Procedure, rule 434. Defendant points out that the jury's verdict found damages for the plaintiff in an amount almost $3,000 more than for which he sued. It relies on this to demonstrate that passion and prejudice played a part in the jury's findings. Adverting to the pleadings it may be observed that plaintiff prayed for damages generally based upon repairs and replacement rather than upon a difference in market value before and after the fire. Absent attack thereupon, the pleadings were broad enough to support the submission of issues based upon market values. The evidence adequately supported the amount found as plaintiff's damages. We fail to perceive where any passion and prejudice have been demonstrated.

The defendant complains that the damages awarded by the judgment were excessive in amount. We have already held that the evidence adequately supports the amounts found as damages. The defendant relates certain evidence bearing upon the increase in value of plaintiff's property after the completion of repairs following the fire, as compared with its value before the fire occurred. As previously noted the damage issues were submitted to the jury by way of inquiries as to the market values before the fire and as to the market values after the fire while the premises were in a damaged condition. There was no defensive pleading by the defendant, nor requests for special issues whereby it sought to reduce the amount of the damages through findings of actual cost to repair and replace the plaintiff's building, enhancement of value after such repair and replacement as compared with value prior to the fire, and other elements. With proper pleadings and proper predicate laid we can speculate that the defendant, with favorable findings to special issues returned, might have been able to reduce the damages awarded. But there was no submission on such a defensive theory. That being true, there was only one use to be made by the defendant of the evidence bearing upon the fact that the plaintiff ended up with property worth more than it was worth before the fire occurred. That use would be made in arguing to the jury that it should not find too great a difference in values before and after the fire when it answered the issues which were submitted. We do not believe that evidence of actual repair costs and of enhancement of property values through repair—as compared with values before any loss had occurred—standing alone, can be relied upon to demonstrate that damages are excessive when found in special issues submitted under the ordinary method.

Finding no error calling for reversal, the judgment is affirmed.