PUBLIX THEATRES CORPORATION ET AL. V. D. W. POWELL ET AL.

No. 6203.    Decided May 2, 1934.
(71 S. W., 2d Series, 237.)

*Davidson, Blalock & Blalock,* of Marshall, *Russell & Russell, R. G. Scurry,* and *Murphy W. Townsend,* both of Dallas, for plaintiffs in error.

The Court of Civil Appeals erred in holding that the plaintiff, in addition to recovering from the defendants the full value of the building, $20,000, was entitled to recover the rentals payable under the lease thereon from the date of the destruction of the building to the expiration date of the lease, aggregating approximately $25,000. Pacific Express Co. v. Lasker Real Estate Assn., 81 Texas, 81, 16 S. W., 792; Missouri, K. & T. Ry. Co. v. Mitchell, 166 S. W., 126; Heidelberg v. Newton, 292 S. W., 909; Pratt Consol. Coal Co. v. Morton, 14 Ala. App., 194, 68 So., 1015; 13 Texas Jur., p. 165, sec. 76.

Under the undisputed testimony, plaintiff having received the said insurance, which equaled the full value of the building, was not entitled to recover from Mid-Tex or from Publix, which was in privity with Mid-Tex, and by agreement with it was assisting or supervising the management and operation of the theatre. Texas & Pac. Ry. Co. v. Levi, 59 Texas, 674; Harding v. Townsend, 43 Vt., 536, 5 Am. Rep., 304; 8 R. C. L., p. 555, sec. 105.

*George Prendergast,* of Marshall, and *Coleman Gay,* of Austin, for defendant in error.

Defendant in error should be permitted to recover for the value of the fixtures and the lease contract, such damages having been directly and proximately caused by the negligence of plaintiffs in error, and defendant in error not having been compensated for such loss. R. S., 1925, Arts. 1856, 1771; 3 Texas Jur., p. 1234, sec. 863; 36 C. J., p. 328, sec. 1133; Tocci v. Powell., 9 App. Div. (N. Y.) 283, 41 N. Y. S., 511; Adams v. Sengel, 177 Ky., 535, 197 S. W., 974, 7 A. L. R., 268; Sandlin v. Coyle, 143 La., 121, 78 So., 261, 3 L. R. A. (N. S.) 389.

MR. JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

In February, 1920, D. W. Powell, defendant in error, was the owner of the "Grand Theatre Building" and equipment, known as the "Grand Theatre" in the City of Marshall. The

real estate on which the building was located was owned by Mrs. M. A. Dial.

In February, 1920, Powell leased the building and equipment to H. S. and H. A. Cole for the term of fifteen years, beginning March 1, 1920, the consideration being an annual payment of $6000.00 in advance on the 1st day of March, each year, to evidence which fourteen joint and several promissory notes payable to Powell and secured by lien on said "Grand Theatre" and all the leased property, were executed.

The Coles operated the theatre until about July 31, 1929, when, with the consent of Powell, who received a consideration of $3000.00 therefor, they transferred and assigned the lease to plaintiff in error, "Mid-Texas Theatres, Inc." of Dallas, Texas, hereinafter referred to as "Mid-Tex," however, not releasing the Coles from their obligations under the contract; it was certified in said transfer or assignment that the Coles had met all their obligations "as of August 1, 1929," and that Powell disclaimed all right, title and interest in and to certain equipment situated on the leased premises, except the landlord's lien thereon.

On August 5, 1929, Powell acquired title to the real estate upon which the Grand Theatre was located. Under the provisions of the ground rent lease from Mrs. Dial (owner of the real estate), lessees were bound to pay the taxes thereon in addition to the sum of $85.00 monthly rental.

The building lease from Powell to the Coles required the latter to pay all taxes, insurance, rents and upkeep by way of repairs needed on the place, and at its termination to deliver to Powell, all leased property in as good condition as when received, ordinary wear and tear and the effect of time, excepted.

The sixth clause thereof reads as follows:

"The said H. S. Cole and H. A. Cole agree to keep said property insured in some solvent company, for at least the sum of $20,000.00, loss, if any, payable to D. W. Powell or the persons then holding said (rental) notes as their interest may appear. It is also agreed and understood that if this building be destroyed by fire, that this lease will hereby terminate, and the rent shall be returned to H. S. Cole and H. A. Cole pro rata."

At about 12 o'clock noon on Sunday, March 9, 1930, the "Grand Theatre" together with all equipment therein was completely destroyed by fire.

At that time the lessees had paid to Powell the annual rental in the sum of $6000.00 for the year beginning March 1, 1930; the trial court found that of this, the amount of $5856.00 was unearned and should be charged to Powell less the amount of

taxes, $663.00, for the year 1930 paid by Powell, for which the lessees were liable under the contract, leaving a net refund amount chargeable against Powell in favor of the lessees, in the sum of $5193.00.

This suit was brought by Powell against H. S. and H. A. Cole, Mid-Texas Theatres, Inc., and Publix Theatres, Inc. (herein referred to as "Publix"), for the destruction by fire of the theatre building and its equipment, plus the amount of the remaining five years of rent payable under the unexpired contract of lease of the building. Liability was sought against "Publix" on allegations that without Powell's consent and contrary to the provisions of the lease and in violation of the statute, "Publix" assumed control and management of the theatre under a surrender to it by "Mix-Tex," and through its negligence the fire resulted. Liability was sought against "Mid-Tex" and the Coles because of their contractual obligations to return the property in the same condition as received, rendered impossible by the destruction thereof by fire. It was also alleged that a conspiracy existed between "Publix" and them, to destroy the property and thus avoid the obligation to pay rentals to become due for the remainder of the rent term. Negligence of "Mid-Tex" in the premises, was also alleged.

The defendants below alleged and offered to prove, but objection thereto was sustained, in mitigation of damages and as showing a want of any damages suffered from the loss of the building, that it was insured for $20,000.00, and premiums paid by defendants, in accordance with the lease contract, loss if any payable to Powell, and that he did collect the said amount from the insurance companies, as a result of and after the fire.

The case was submitted to a jury, on special issues, answers to which, in substance, follows:

*1st.* At the time of the fire, on March 9, 1930, the Publix Theatres, Inc., was in control of and operating the theatre; it allowed trash and other inflammable material to accumulate on the date of the fire, which was negligence and the proximate cause of the building being destroyed by fire. That said Publix Theatres, Inc., by its conduct had converted the theatre and its furnishings to its own use prior to the fire; that plaintiff Powell did not give his consent for the Publix Theatres, Inc., to occupy and control the building and leased premises.

*2d.* At the time of the fire on March 9, 1930, the Mid-Texas Theatres, Inc., was not in control of and operating the theatre, but by its affirmative action or failure to observe proper care of the building, caused same to take fire and be destroyed by fire.

*3d.* The destruction by fire of said building, on March 9, 1930, was not the result of an unavoidable accident.

*4th.* The cash market value of the building was $20,000.00 and of the equipment therein was $2500.00 at the time of the destruction thereof by fire, on March 9, 1930.

The trial court submitted two additional issues, viz:— *"Question No. 16.* Did the defendant Publix Theatres, Corporation, set fire or cause fire to be set to the building known as the Grand Theatre?" and *"Question No. 17.* Did the defendant, Mid-Texas Theatres, Inc., set fire or cause fire to be set to the building known as the Grand Theatre?" Both were answered "Yes" by the jury and the trial court found therefrom that a conspiracy existed between "Mid-Tex" and "Publix" to destroy the property in question.

The Court of Civil Appeals, however, concluded that the fire was due to the want of care in the proper keeping of the building, was of negligent origin, and that the building was not, so far as the evidence shows, deliberately set on fire by any person, so the questions of conspiracy and of actual arson, may for the purposes of this opinion, pass out of the case.

The trial court rendered judgment for plaintiff Powell against "Publix" and "Mid-Tex" jointly and severally, based upon the finding of the jury, for $20,000.00, value of the building, and $2500.00 for the equipment in the building, and for $25,000.00 upon a finding made by the court, for rent for the unexpired term payable under the lease contract, less a credit of $5193.00, unearned rent paid, as above stated, aggregating $42,307.00 as the amount adjudged.

The court found in favor of the defendants, Coles, and they were eliminated from the controversy.

Said judgment was affirmed by the Court of Civil Appeals (44 S. W. (2d) 1053).

#### OPINION.

■ *First:*—The fire *ipso facto* terminated the lease contract. Under its terms the contract terminated when the building was destroyed by fire and any advance unearned rental then paid was required to be returned pro rata to the lessees. After the fire, the lessees' possession immediately reverted to the lessor, and the lessor's right to collect future rents immediately ceased (Bushman v. Wilson, 29 Md., 553); he was bound to refund the pro rata portion of the annual advance rental collected by him on March 1, 1930, then unearned. This was recognized by the court below and lessees received credit therefor. If it was proper to cancel unearned rent for the year, March 1, 1930, to

March 1, 1931, the unearned rent for the years subsequent to the latter date also should have been cancelled.

■ The theory upon which the case was tried was that the fire resulted from the negligence of "Publix" and "Mid-Tex," the former being in control and operating the theatre with the consent of the latter, and that the measure of damages for the alleged negligent destruction of the building and equipment by fire, is their value at that time. It was so claimed by plaintiff below and so submitted to the jury, thus:—"Special Issue No. 7. What was the cash value of the building destroyed by fire at the date it was destroyed on March 9, 1930"; Special Issue No. 8 inquired in similar language the value of the equipment.

It is true, defendants objected to the submission of these issues, but only "because there is no legal or competent evidence as to the cash market value of the building as of March 9, 1930, or that would support any finding" thereon, and "because there is no evidence of the value of the equipment or that the same was in the building when destroyed or when the lease was made, or the value thereof"; no objection was made on the ground that the true measure of damages, is the difference between the value of the property (including lot and building) just before and just after the fire.

The action is clearly one for recovery of the value of the property destroyed and not for recovery of damages done to the freehold.

However, the only witness who testified on the subject, said that he could not give testimony as to the value of the building, but the lot with the building on it on March 9, 1930, was worth $40,000.00, and the lot after destruction of the building was worth $20,000.00.

In Houston & T. C. Ry. Co. v. Smith, 46 S. W., 1046, a case similar to this, the trial court instructed the jury in estimating the damages, to allow the market value of the land with improvements at the time of the fire and such value just after the fire.

Judge Williams said: "This may be the correct way in which to determine the damage which plaintiff would be entitled to recover, but the petition is not sufficient to support such a recovery. Such damages are not claimed in the pleading nor are facts alleged from which the right of plaintiff to recover them can be deduced as a legal conclusion. * * * As the petition stands there is no basis for any relief but that for which plaintiff specially prays."

While plaintiffs in error concede that for the destruction

of a building, the owner of the land and building, in some cases may recover the value of the building instead of the difference between the value of the land "before" and "after" destruction of the building, they argue that if allegations of the value of improvements destroyed will not support a judgment for the difference in value of the land with the improvements on it before the fire and such value just after the fire, then testimony as to such "before" and "after" value will not support a finding of the value of the improvements unless properly plead. It would seem that this contention must be sustained on the authority of Houston & T. C. Ry. Co. v. Smith, supra.

Said the court in Missouri, K. & T. Ry. Co. v. Mitchell, 166 S. W. 127 (writ of error refused), after finding that Mitchell was the owner of the lot upon which the destroyed house stood, in answer to the claim that the measure of damages was the difference in value of the lot just before and just after the fire: "Ordinarily this is the true measure of damages especially where the plaintiff sues for the damage to his realty. But cases may arise in which the injured party may sue for and recover the value of fixtures attached to the realty independently of the incidental damage to the realty. Galveston, etc., Ry. Co. v. Warnecke, 43 Texas Civ. App., 83, 95 S. W., 600; Tex. Mid. R. R. Co. v. Moore, 74 S. W., 942; Tyler S. E. Ry. Co. v. Hitchins, 26 Texas Civ. App., 400, 63 S. W., 1069; H. & T. C. Ry. Co. v. Smith, 46 S. W., 1046. Compensation for the loss sustained is the end sought by the law in all cases, and while a plaintiff undoubtedly would be entitled in any case like the present to recover the difference in the value of his land immediately before and immediately after the fire, and while this perhaps is the better and safer rule for all cases, yet there is no sound reason for denying him the right to recover the market value, or the real value in the absence of a market value, of the improvements or fixtures destroyed, considered separate and apart from the realty; for, if such values be justly appraised by the jury, the damages when thus measured can by no possibility exceed the damages when measured by the rule first stated. A defendant in such a case has no just complaint that the plaintiff recovers only the value of such improvements, which loss he necessarily has sustained, and is not allowed to recover the additional depreciation of his land by reason of the severance of the fixtures from the realty."

In the instant case the proof should, under the pleadings, have been limited to the value of the destroyed improvements and not included damages or depreciation, if any, to the land by reason of the severance of the fixtures from the realty.

■ *Second:*—Each of the defendants pleaded in its answer, the following:

"And as provided in the lease agreement the lessee carried for the account of lessor fire insurance in the sum of $20,000.00 on the property denominated Grand Theater, and after the fire alleged above, the plaintiff filed proof of loss and the insurance company carrying the insurance mentioned above paid the plaintiff $20,000, and by reason thereof if and in the event the defendant is liable to plaintiff for the return of the property, the value thereof should have credit for the amount of insurance so paid, and the defendants here and now assert such credit as an offset thereto."

The plaintiff excepted thereto, as follows:

"Plaintiff specially excepts to that portion of defendants' answer wherein it is alleged that the plaintiff had insurance in the sum of $20,000 on this building, and that the plaintiff has collected that insurance. The plaintiff excepts to this allegation because: (1st) it is no concern of the defendants as to whether or not insurance was carried on the building; (2nd) if the insurance was carried on the property it constitutes no defense to plaintiff's cause of action and it is merely plead to prejudice the rights of the plaintiff before the jury."

Said exception was sustained by the trial court.

Defendants offered to prove by plaintiff that the lessees lived up to the provisions of the contract as to the payment of the rental installments therein agreed to be paid, paid the taxes on the property up to the time of the fire, paid all premiums on the insurance as required by the lease contract, that the insurance was in full force and effect at the time of the fire; that after the fire plaintiff made proof of loss to the insuring company and collected the sum of $20,000.00 thereunder; that plaintiff paid none of said premiums.

The above testimony elicited from plaintiff (the jury having been removed from the room) was held inadmissible. The court in qualifying the bill of exceptions referring thereto, states that at the same time, plaintiff testified that when he made the contract with the two Coles, he and they agreed on $6,000.00 rental per year, provided lessees would carry the insurance, and if they did not carry the insurance, plaintiff would have to have enough rent for him to carry it.

Any such prior oral discussion was of course merged in the consummated written contract and in passing on the question we must consider only the written contract. Norman v. Stark G. & E. Co., 237 S. W., 963 (error refused); 10 Tex. Jur., 366, Sec. 208.

■ Defendant in error argues that the fact that he collected the insurance upon the destroyed building is immaterial and the damages can not be mitigated as the insurance was for the protection of the lessor and not of the lessee; he says, also "it might be said that if the building had been destroyed by fire through no fault of any one there might not be any liability but this case is predicated upon tort in that 'Publix' is sought to be held to respond in damages because of its wrongful conduct or act and there is no privity of contract between 'Publix' and the insurance company."

He says also: "It is well established that Powell cannot have a double recovery. That is, he cannot collect the insurance from the insurance company and also the value of the building from the wrongdoer, but as so aptly stated, this is no concern of the wrongdoer, but is purely a matter between Powell and the insurance company. Powell's agreement with the insurance company and the insurance company's rights under the subrogation feature of policy gives the insurance company the right to have the insurance money returned to it in event Powell collects the full value of the building from the wrongdoer, but this is no concern of the wrongdoer but is purely between Powell and the insurance company."

The lease contract provided for the return of the premises in as good condition as when received ordinary wear and tear and the effect of time excepted, and to assure such, the lessees carried insurance at their own cost and expense on the leased property in the sum of $20,000.00, loss payable to the lessor as his interest may appear. The lease contract also provided for its termination on destruction of the building by fire.

When so destroyed lessor's loss was the value of the destroyed property—that was his interest in the insurance and when paid, of course, satisfied the loss, if the loss equalled or was less than the amount of insurance. To permit the lessor to keep the insurance money, in such a case, and then collect from the tenant would be a double recovery not sanctioned by law. If the fire resulted from the tenant's negligence, the tenant is liable for the result of that negligence, but when he has provided for the resulting damages, either by payment himself or by payment through an insuring company, he has satisfied the claim of the damaged party.

We are aware of the line of authorities holding that the payment of insurance monies to which the wrongdoer does not contribute, does not relieve the tenant from liability to pay rent, and that a wrongdoer may not take the benefit of a policy of insurance in mitigation of damages—to sustain which de-

fendant in error cites us to Dillon v. Hunt, 105 Mo., 154, 16 S. W., 516, and Matthews v. St. Louis & S. F. Ry. Co., 121 Mo., 298, 24 S. W., 591, both by the Supreme Court of Missouri. There is nothing said in these cases contrary to our holding here. In Dillon v. Hunt, the court said "Nor will proof of money paid to the injured party by an insurer or other third person, by reason of the loss or injury, be admissible to reduce damages in favor of the party by whose fault such injury was done. The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable. To permit a reduction of damages on such a ground would be to allow a wrongdoer to pay nothing, and take all the benefit of a policy of insurance without paying the premium."

The situation in the instant case is entirely different. Here the contract (fully complied with by the lessees) required them to keep the property insured against destruction by fire, and to pay the premiums. The lessor paid nothing for that. The parties were in privity to each other by reason of such contract and the insurance was for the benefit of lessor. It is argued that "Publix" was not in privity with the lessor but wrongfully converted the property. "Publix" was in possession under "Mix-Tex"—whether rightfully or not, so far as lessor is concerned, is beside the question—with full knowledge and consent of "Mid-Tex" and representing it, or at least in its place. The rights of "Publix" were the same as those of "Mid-Tex," and not antagonistic as between themselves, if, as contended by the lessor, "Publix" was in possession of and operating the theatre.

In Texas and P. Ry. Co v. Levi, 59 Texas, 674, the owner of cotton damaged by fire from the company's engine recovered, and it was held that the collection of its value from insurance companies constituted no defense to the railway company. This was because, as said by Judge Stayton, payment by the insurance company was the result of the contract with which the railway company had no privity and to which in no respect had it made any contribution. Here the alleged wrongdoers were in privity to the insuring company as well as to the lessor, and actually contributed and paid in full the cost of the insurance.

In Whitaker v. Hawley, 25 Kan., 674, 37 Am. Rep., 277, Judge Brewer, afterwards a Justice of the Supreme Court of the United States, states the law to be that where a tenant has covenanted to pay rent and also to keep the premises insured

for the lessor's benefit and the premises are destroyed and the insurance money collected by the lessor, this absolves the tenant from further liability for the payment of rent.

It is insisted that Whitaker v. Hawley is not authority here, because there the leased premises were destroyed through no fault of the tenant, whereas here it is claimed that the fire was the result of the tenant's fault and negligence. Defendant in error says in his brief that under the common law, if a tenant contracted to rent a building for a given time and even though the building was destroyed he was still liable for rent; he says further, that this doctrine has been abrogated to a certain extent under the modern practice, but no case holds that the one guilty of wrongful act which caused the destruction of a building is relieved of any obligation.

Conceding this to be true, the obligation is to pay the damages caused by the wrongful act, which in this case, means the value of the destroyed property; how it is paid is no concern of the party damaged. One of the purposes of carrying insurance is to provide against accident or negligence which may result in damage; in the agreement between lessor and lessees it was in contemplation of the parties that the lessor should be indemnified against loss by fire, whether accidentally or negligently caused.

. Georgetown Water, G. E. & P. Co. v. Neale, 125 S. W., 293, is helpful in this consideration. The Georgetown Co. contracted with the city to furnish and mantain a certain water pressure for fire protection. The company negligently failed to maintain the pressure. Neale's stable burned and he collected insurance on the stable. The Court of Appeals of Kentucky said that the plaintiff had two contracts protecting him against loss of his property, one with the water company for fire protection and another with the insurance company insuring him against loss from fire. He was entitled to be made whole and when he has collected on one of his contracts a part of his loss he can only collect on the other the remainder.

We attach no importance to the suggestion of defendant in error that the double collection,—of insurance from the insurance company and the value of the building from the lessees,—is of no concern to the latter but is purely a matter between Powell and the insurance company, that company's rights being under a subrogation feature of the policy giving the company the right to have the insurance money returned to it in event Powell collects the full value of the building from the alleged wrongdoer (lessees).

The insurance company is not a party to this suit; the

policy referred to is not in the record and its terms therefore not before the court. Certainly, Powell cannot, under such a state of facts, assert rights, if any, the insurance company may supposedly have.

The court erred in sustaining the exception to that portion of the defendant's answer alleging collection by plaintiff of insurance money, and in sustaining objections to the proof thereof.

The judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded for trial.

Adopted by the Supreme Court, May 2, 1934.