**GLENS FALLS INSURANCE COMPANY,**
**Appellant,**

**v.**

**Anthony L. VETRANO, Jr., Appellee.**

**No. 13714.**

Court of Civil Appeals of Texas.

Houston.

June 15, 1961.

Rehearing Denied July 13, 1961.

Red, Kemp & Fahey, Pat N. Fahey, Houston, for appellant.

Blakeley & Williams, Carey Williams, Houston, for appellee.

WERLEIN, Justice.

Glens Falls Insurance Company appeals from a judgment in the sum of $250 recovered by appellee for the death of a Labrador Retriever, under a comprehensive dwelling insurance policy issued by appellant. The policy contains a "Physical Damage to Property Endorsement" which provides that appellant will pay for damage or destruction of property of others caused by the insured, the actual cash value of the property not to exceed the sum of $250.

The insurance coverage provided in said endorsement does not apply: (b) to loss arising out of the ownership, maintenance, operation, use, loading or unloading of any land motor vehicle, trailer or semi-trailer, farm machinery or equipment, aircraft or watercraft, or (c) to loss of property owned by or rented to any insured, any resident of the named insured's household or any tenant of the insured.

Appellant, in its first Point, contends that there is no evidence that appellee caused the death of the dog. In Point 2, briefed with Point 1, appellant asserts: "Because the evidence was insufficient to prove that any act or omission of plaintiff caused the death of the dog, the trial court erred in rendering judgment for plaintiff."

It is our view that Point 2 is also a "no evidence" assignment or point of error. It does not state that the judgment or the court's implied findings of fact are not supported by sufficient evidence or that they are against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. It merely states the evidence is insufficient to *prove* any act or omission of plaintiff caused the death of the dog. Any evidence of probative force more than a mere scintilla is sufficient to prove a fact. Joske v. Irvine, 1898, 91 Tex. 574, 44 S.W. 1059; Younger Brothers, Inc. v. Myers, 1959, 159 Tex. 585, 324 S.W.2d 546. The point of error does not go the further step and raise the question of the sufficiency of the evidence to support the court's judgment. Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506, writ ref., n. r. e. Moreover, said point of error is briefed and argued as a "no evidence" point and not as a point raising the sufficiency of the evidence to support the implied findings and judgment of the court.

In deciding whether there is any evidence of probative force to support the court's judgment and implied findings that appellee caused the dog's death, and that the death did not result from use of the automobile, we may consider only that evidence, if any, which, if viewed in the light most favorable to appellee, will support the judgment, and we must disregard all evidence which would lead to a contrary result. "* * * it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." Ranfro Drug Co. v. Lewis, 1950, 149 Tex. 507, 235 S.W.2d 609, at page 613; Montgomery Ward & Co. v. Scharrenbeck, 1947, 146 Tex. 153, 204 S.W.2d 508, at page 511; Robertson v. Robertson, 1959, 159 Tex. 567, 323 S.W.2d 938; Biggers v. Continental Bus System, 1957, 157 Tex. 351, 303 S.W.2d 359; Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497.

The evidence shows that on or about August 22, 1959 appellee borrowed the Labrador Retriever from a friend, agreeing to pay him the sum of $500 if anything

happened to the dog. The dog's value was in excess of the policy limits. Appellee, in company with his attorney, Carey Williams, put the Retriever and a bird dog, which appellee owned, in the trunk of Mr. Williams' automobile, and drove from Houston to Katy, Texas, for the purpose of letting the dogs run, and also in order to look after a duck lease. They first went to Mr. Longenbaugh's home just north of Katy, where the dogs were permitted to run and exercise in a large yard, and where they showed off the Retriever, throwing things for him to retrieve. The dogs appeared to be in excellent shape. They then put the dogs in the trunk and drove five or six miles to the duck hunting lease, where the dogs were again permitted to exercise and run in a large rice field. After the dogs had run and exercised for some time they were placed in the trunk again, and the car was driven to the appellee's home in Houston. On arriving there the dogs were released from the car trunk. The bird dog, a Pointer, was in good shape, but within a short time it was noticed that the Retriever was weak-kneed, quivering and gasping. Efforts were made to give him artificial respiration and to revive him by pouring cold water on him, but in vain. He died about 45 minutes later.

There is evidence that appellee had carried dogs in the trunk of his car without mishap for some 30 years and that he had been advised by a veterinarian that it was a safe way to carry them. On the occasion in question the day was hot but, according to Williams, it was hotter when they went out to Katy than at the time of the return trip. The dogs had run for some time out in the rice field and one of them had chased a jack rabbit. The evidence shows that the Labrador Retriever had a heavy coat and was a warm-blooded dog adapted to cold weather and that the bird dog is a short-haired dog. Mr. Vetrano testified, when asked with respect to what caused the dog's death, "First of all, I guess I could have been negligent in running the dogs on an extremely hot day. They do get heat

prostration and quit on you." The court asked the question, "Do you know enough about the breed to know that is dangerous?" to which Mr. Vetrano answered, "Yes, I know that it is."

Appellee also testified that he put the Retriever out with the bird dog; that a bird dog's business is just to run and cover ground continuously; and that the Retriever followed the bird dog over the prairie, chasing rabbits and things. The witness added: "And these Retrievers might work 200 yards and back to you twice, or four times in one day, and that's the extent of their,—you know, running."

Dr. Leo Vogelman, a veterinarian, testified in answer to a hypothetical question, that in his opinion the most probable cause of the dog's death was a heat stroke. He also testified that there was no reason not to determine that both of the dogs would have been dead if there had been carbon monoxide poisoning; that basically the Retriever is a northern dog and care should be given that type of dog because of its insulator type of coat.

It is true that Dr. Vogelman testified on cross-examination that it was equally possible that the dog died as a result of being shut in a confined area; that he did not consider it an advisable practice to carry dogs in a car trunk but he found a lot of hunting people who did so. After taking into consideration the running of the dogs, their trip in the trunk of the car, the fact that the bird dog suffered no ill effects, and all the other facts presented to him in connection with the occurrence, the doctor testified that the most probable cause of the heat exhaustion of the dog was "Over exercise in the heat of the summer out at the duck blind; over exercise."

■ We think the testimony hereinabove set out constitutes some evidence of probative force that appellee's action in releasing the Retriever on an extremely hot day in August to run at large with a bird dog probably brought on a heat stroke and caus-

ed the dog's death. The evidence also supports the court's implied finding that the death of the dog resulted from overexercise of the dog and not from carrying him in the trunk of the car. The loss, therefore, does not come within the exclusion applying to the ownership, maintenance, operation, use, loading or unloading of an automobile.

■ Appellant's Points 3 and 4 are to the effect that the court erred in rendering judgment for appellee because of a variance between his pleading and proof. Appellee alleged that while "said dog was in the care, custody, and control of a person other than your Plaintiff, the above mentioned Labrador Retriever did die and was destroyed from an accident for which your Plaintiff was responsible and for which he has paid *for* in excess of such policy limits."

■ The proof shows that the dog was in the care and custody of the appellee or jointly in the care and custody of appellee and Mr. Williams. We do not consider this a fatal variance. We have found nothing in the policy endorsement, Form No. CDP–118, upon which the suit is based, with respect to appellant not being liable in the event the dog was in the custody of appellee at the time of his death. We think the allegation was unnecessary and of no controlling importance. Appellee pleaded he was responsible for the loss. The law is well settled that to be fatal, a variance must be a substantial, misleading and prejudicial departure. 33 Tex.Jur., p. 654, Pleading, § 197; Kleber v. Pacific Ave. Garage, Tex.Civ.App., 70 S.W.2d 812. See also 33 Tex.Jur., p. 655, § 198, where it is stated: "The requirement that pleadings and proof must correspond does not affect the validity of a judgment rendered under pleadings containing unnecessary and immaterial averments that were not proved."

Moreover, Mr. Thomas, who investigated the claim for appellant, had been advised previously of the facts with respect to the custody of the dog. We think such information was notice to appellant of what appellee would undertake to prove. Indeed, by trial amendment appellant pleaded that the defendant was not liable on the policy because the dog was in the care, custody and control of the plaintiff.

■ Appellant, in its 5th and 6th Points, asserts that it is not liable to plaintiff for the death of the dog because of the exclusions in the policy and because the dog was in the care, custody and control of appellee. We do not agree. Under the terms of the endorsement in question none of the exclusions or conditions of the policy, other than the exclusions referred to or contained in such endorsement, apply to the insurance afforded by the endorsement. There is no provision in the endorsement excluding a loss resulting to property in the care, custody and control of the insured. The other exclusions in the policy have been discussed in considering appellant's other Points of Error.

The judgment of the trial court is affirmed.