Raymond J. BROWN, Petitioner,

v.

AMERICAN TRANSFER·AND STOR-
AGE COMPANY, Respondent.

No. B–8565.

Supreme Court of Texas.

June 18, 1980.

Rehearing Denied July 23, 1980.

Adams & Mims, Carl David Adams, Dallas, for petitioner.

Golden, Potts, Boeckman & Wilson, Duncan Boeckman, Dallas, for respondent.

CAMPBELL, Justice.

This is a deceptive trade practices case. The trial court rendered judgment for Plaintiff Brown, based on a jury verdict. The Court of Civil Appeals reversed the trial court's judgment and remanded for a new trial. 584 S.W.2d 284. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court except that part of its judgment which awarded recovery for mental anguish. The trial court's judgment is otherwise affirmed.

In July 1974, Brown contacted American Transfer to determine the services offered in a move of household furniture and goods, and automobile, from Irving, Texas, to Fairbanks, Alaska. Joe Stanton, a salesman for American Transfer, went to Brown's home, surveyed its contents and described the services offered. Stanton represented the furniture and goods would be packed securely in wooden vaults or crates in Brown's presence; the containers would not be opened or tampered with until delivered to the Browns' Fairbanks home; the automobile would be shipped separately; and, the furniture would be unpacked and placed in the Fairbanks house at Brown's direction. Relying on these representations, Brown contracted with American Transfer for shipment.

These representations were contrary to American Transfer's actual method of operation. American Transfer's employees packed the furniture and goods as represented; but at American Transfer's Dallas warehouse and without Brown's knowledge, they removed the furniture and goods from the wooden containers. The furniture and cardboard boxes containing Brown's other possessions were then packed in one sealand container in a "Loose Pack" with the automobile.

Most of the items shipped were badly damaged or missing. The automobile had been driven 1200 miles and had been wrecked. Additionally, the practice of the terminal carrier was to set the furniture and cardboard containers in the house and not to unpack the furniture and goods and place them as directed, as was represented to Brown.

American Transfer was not an interstate carrier but served as an agent for interstate carriers and as a packer of goods for interstate shipment. Interstate authority is not required to accept goods, turn them over to a freight forwarder for shipment, and collect for all the charges up and down the

line. The freight forwarder, Columbia Export Packers, Inc., issued its household bill of lading and freight bill covering the transportation of Brown's possessions. The bill of lading and the order for services signed by Brown limited American Transfer's damages to 30¢ per pound of the weight of the goods shipped or $25 per article. The order for services also provided that Brown would arrange additional insurance if desired. Brown secured insurance from Insurance Company of North America (INA) and collected $11,009.22 under the policy.

A jury found American Transfer represented to Brown that the moving services of American Transfer (1) would include benefits and characteristics which they did not include; and (2) were of a particular standard, quality or grade, when in fact they were not. The jury found damage to Brown's household goods and furniture of $18,434.00; cost of repair of the car was $1,059.22 and $5,000.00 damages from mental anguish. The trial court rendered judgment against American Transfer for treble damages and attorney's fees.

We are to determine whether

(1) the collateral source rule is applicable to the INA payment;

(2) American Transfer pleaded the existence of any contract entitling it to the benefit of the INA payment or offset by reason of such insurance payment;

(3) the INA policy or the payment thereunder was admissible in evidence as an admission by Brown of the extent of his damages;

(4) American Transfer's objections to special issues were preserved for appellate review;

(5) Brown's claim for damages is controlled by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20, ¶ (11) which, under the doctrine of pre-emption, proscribes application of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) to limit Brown's damages

to 30¢ per pound of the weight of the goods shipped; and

(6) damages for mental anguish are recoverable under the DTPA.

## COLLATERAL SOURCE AND DOUBLE RECOVERY

The order for moving services, provided by American Transfer, limits its liability to 30¢ per pound per article and to $25 total claim per article. The order further provides "I will arrange additional insurance if desired." Brown desired additional insurance and provided in the order for $26,100.00 of coverage at a premium of $552.00. Brown's wife signed the order, paid the premium, and was issued a "Transit-Pak" certificate of insurance by American Transfer, as agent for INA. The INA certificate excluded subrogation against American Transfer.

The bill of lading and freight bill issued by American Transfer as agent for Columbia Export Packers, Inc., also limits the carrier's liability to 30¢ per pound and states "additional insurance is available to the shipper in the event he desires it." However, Brown did not sign this document until the goods were delivered in Alaska.

Brown filed a written claim with INA and was paid $10,000.00 for loss and damage to furniture and goods and $1,009.22 for damages to the car. American Transfer contends it should receive the benefits of the insurance payment and the Court of Civil Appeals agreed. We disagree.

■ The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Texas & Pacific Ry. Co. v. Levi & Bro.*, 59 Tex. 674 (1883). Levi's cotton, stored in the Levi yards adjacent to the tracks, was destroyed by fire caused by negligence of the railroad. Levi collected insurance on the cotton under a policy secured by it and on which it had

paid the premiums, and then sued the railroad for damages. The railroad's defense was Levi had been compensated for the loss under a fire insurance policy. The court held:

If the cotton had been fully paid for by insurance companies under policies which had been paid for by the [Levis], it is not perceived how that could in any manner affect the liability of the [railroad]. Such payment would be the result of contract with which [the railroad] has no privity, and to which, in no respect, had it made any contribution.

The insurer and the defendant are not joint tort-feasors or joint debtors so as to make the payment or satisfaction by the former operate to the benefit of the latter; nor is there any legal privity between the defendant and the insurer so as to give the former the right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff at his expense, and to the procurement of which the defendant was in no way contributory. . . . It cannot be said that the plaintiff took out the policy in the interest or behalf of the defendant, nor is there any legal principle which seems to require that it be ultimately appropriated to the defendant's use and benefit.

■ The *Levi* opinion is controlling. Payment to Brown by INA was the result of a contract to which American Transfer had made no contribution and was not privy. INA and American Transfer were not joint tortfeasors or joint debtors. The INA policy was procured solely at Brown's expense. American Transfer did not aid in the procurement of the policy except to issue the policy, as an insurance agent, and collect the premium. The provision in the order stating "additional insurance is available to the shipper in the event he desires it" is not contractual. It advises Brown of a right which he already has and is no more than a warning. There is nothing to indicate that Brown obtained the policy for American Transfer's benefit. There is no legal principle to require the proceeds be appropriated to American Transfer's benefit for violations of the Deceptive Trade Practices Act (DTPA).

The collateral source rule was not applied in *Publix Theatres Corporation v. Powell*, 123 Tex. 304, 71 S.W.2d 237 (1934). Powell, lessor, by written contract required Publix, lessee, to keep the property insured, for at least $20,000.00, with loss payable to lessor. Fire destroyed the building, and lessor, after payment of $20,000.00 by the insurance company, sued lessee for the loss of the building. This Court held to permit the lessor to keep the insurance money and also collect from the lessee would be a double recovery not sanctioned by law. The lessee is liable for the result of his negligence but when he has provided for those damages, either by personal payment or insurance payment, the damage claim has been satisfied. The contract required insurance, which was to be paid by lessee, and the parties were in privity with each other by reason of the contract. The facts in *Publix* are distinguishable from Brown; however, the reasoning is helpful in demonstrating the application of the rule.

In *Wichita City Lines v. Puckett*, 156 Tex. 456, 295 S.W.2d 894 (1956), a lease agreement provided "Lessor agrees to carry his own insurance against loss by fire, etc., on the entire building." The Bus Lines, lessee, contended the insurance purchased by Puckett was for the benefit of both, and that Puckett could not recover from the Bus Lines after receiving the insurance payment. This Court held the collateral source rule applied because the insurance provision did not impose an obligation on the lessor to protect himself, or the lessee, by insurance; an amount of insurance was not specified; and, there were no specific terms designed to protect the lessee. The Court stated, "To be given the effect of exonerating the lessee the contractual provision must be clear and unambiguous and

will be strictly construed against such effect if any other meaning may reasonably be ascribed."

■ The collateral source rule applies to the INA payment to Brown. If payment is within the collateral source rule, the principle forbidding more than one recovery for the same loss is not applicable.

## FAILURE TO PLEAD OFFSET

Brown contends the Court of Civil Appeals erred in considering insurance benefits because American Transfer failed to plead any contract or agreement that would entitle it to an offset or credit against Brown's damages by reason of such offset. It is provided in Rule 94[1] that in pleading to a preceding pleading a party shall set forth affirmatively matters constituting an affirmative defense. American Transfer's pleadings merely recite the existence of insurance and the payment of insurance proceeds to Brown. It does not plead any contract whereby Brown agrees the INA payment would be available to American Transfer or that the payments should be offset.

American Transfer has not briefed this point. It states in its brief that a copy of the Household Goods Bill of Lading and Freight Bill, issued by Columbia Export Packers, Inc., was attached to the pleading and the attachment contains the contractual language applicable to the insurance payment. However, only a copy of the front side of the bill of lading was attached and the language on which it relies is on the back side. There are no pleadings of offset.

■ The right of offset is an affirmative defense. The burden of pleading offset and of proving facts necessary to support it are on the party making the assertion. *Southwestern Bell Telephone Co. v. Gravitt,* 551 S.W.2d 421 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). The point is waived.

1. All Rule references are to Texas Rules of Civil Procedure.

## EVIDENCE

■ The trial court, by order in response to a motion in limine prohibited American Transfer from making any mention or interrogation that Brown had purchased insurance to compensate him for damages or that he had received compensation from any insurance company for all or part of his damages without first approaching the bench and obtaining a ruling from the court. American Transfer argued, in the Court of Civil Appeals, that Brown's claim and acceptance of a smaller amount than asserted as damages in the trial court was admissible into evidence because it was an admission that the amount of damages to his goods was not as great as that now claimed. The Court of Civil Appeals held the evidence admissible. However, that point was not before the court as American Transfer did not offer this evidence to the trial court during the course of the trial or in the Bill of Exceptions. In the Bill, American Transfer asked that Exhibits 5 (proof of loss) and 6 (loan and trust receipt of INA) be attached as Exhibits to the Bill. This does not constitute an offer. A ruling of the trial court to the admissibility was not obtained. American Transfer has waived this point.

## SPECIAL ISSUES

The jury found that American Transfer represented to Brown that the moving services of American Transfer (1) would include benefits and characteristics which they did not include, and (5) were of a particular standard, quality or grade, when in fact they were not. The jury also found each representation to be a producing cause of damage to Brown.

The only objection to the issues made in the trial court, which was preserved in the Court of Civil Appeals, was that the issues were so broad they denied a fair trial. Because it had reversed the case on other grounds, the Court of Civil Appeals did not

consider this point. However, that court, in an advisory opinion, directed the manner of submission of issues in deceptive trade practices cases.

The Court of Civil Appeals stated that *Spradling v. Williams*, 566 S.W.2d 561 (Tex. 1978), required issues to inquire whether the particular act or practice alleged occurred. It also stated that the issues submitted by the trial court which followed closely the wording of the statute, asked legal questions rather than making factual inquiries. We disagree.

The opinion in *Spradling* held the jury finding "Spradling represented the boat in question was a 1973 model boat built in 1973," is the same act or practice listed in 17.46(b) which provides:

Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Therefore, it was not necessary to submit an issue whether the representation was deceptive or to so instruct the jury. The *Spradling* opinion did not suggest that issues inquiring whether specific representations occurred was the exclusive method of submission.

It is provided in Rules 277 and 279:

It shall be discretionary with the Court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues. (Rule 277).

When the Court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence . . . . (Rule 279).

■ Issues in deceptive trade practice cases for 17.46(b) violations should be submitted in terms as close as possible to those actually used in the statute. The language of the statute may be altered somewhat to conform the issue to the evidence of the case. *See Pope and Lowerre*, 11 St. Mary's L.J. 1 (1979).

■ The statutes involved are 17.46(b)(5) and 17.46(b)(7). They provide:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model, if they are of another.

The submitted issues follow closely the wording of the statute with alterations or deletions to conform the issues to the pleadings and evidence. Therefore the broad form submitted in the instant case was proper.

■ The amendment of Rule 277 in 1973 was designed to abolish the practice which required the submission of issues "distinctly and separately." Our decision in *Scott v. Atchison, Topeka, and Santa Fe Ry. Co.*, 572 S.W.2d 273 (Tex.1978), has been misconstrued by some judges and writers as a retreat from the revised rule which says: "It shall not be objectionable that a question is general or includes a combination of elements or issues." *Scott*, as we explained in the opinion itself and repeated in *Siebenlist v. Harville*, 596 S.W.2d 113 (Tex.1980), was a case in which there was a "wide variance" between what plaintiff pleaded and the evidence he produced at trial. He failed to produce any evidence on pleaded acts; he produced an abundance of evidence on six or seven unpleaded acts. A case could hardly be conceived in which a variance could be wider than that found in *Scott*.

■ Variance between pleadings and proof has rarely been the source of harmful error. To be reversible the variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977); *Gulf, C.*

& S.F. Ry. Co. v. Witte, 68 Tex. 295, 4 S.W. 490 (1887); Orgain v. Butler, 478 S.W.2d 610 (Tex.Civ.App.—Austin 1972, no writ); McPherson v. Billington, 399 S.W.2d 186 (Tex.Civ.App.—Amarillo 1965, no writ); Glens Falls Ins. Co. v. Vetrano, 347 S.W.2d 769 (Tex.Civ.App.—Houston 1961, no writ); Lumbermen's Ins. Corp. v. Jones, 311 S.W.2d 873 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n. r. e.). We repeat what we noted in Siebenlist, "we are not to be understood as holding that a broad submission of an issue will be reversed simply because one or more acts which contributed to the injury was not particularly pleaded or proved."

■■■ An objection to an issue which states that it is global, as was done in this case, is no good. While an issue no longer need be submitted "separately and distinctly," an objection to a charge must be made "distinctly" and "specifically." If there be a variance between pleadings and proof, the distinct and specific variance or other defect must be stated in the objection or it is waived. Rule 274, Tex.R.Civ.P. The court at that stage may permit an amendment under Rule 66; it may want to include the specified variances in a limiting instruction, or it may submit the issue broadly without any limiting instruction depending on the nature of the pleading, the evidence and the materiality of the variance. In the instant case we do not find any variances between pleadings and proof or other defect that would justify a different submission than the trial court used.

### THE CARMACK AMENDMENT

■■■ The Carmack Amendment regulates claims for damages to freight shipped in interstate commerce and prohibits states from limiting or expanding a carrier's liability to a shipper. 49 U.S.C. § 20(11). Brown contended the liability of the packing company rested solely on the DTPA and not on the contract for carriage. He alleged he had been induced into the contract for carriage by American Transfer's misleading and deceptive representations and because of the misrepresentations he had been damaged. American Transfer argued that its representations to Brown arose out of the contract for interstate shipment which was governed exclusively by the Carmack Amendment. Thus, the controlling issue is whether the Carmack Amendment pre-empts DTPA's liability for false, misleading or deceptive acts and practices that occurred before the contract of carriage was made.

The Court of Civil Appeals held the Carmack Amendment applied only to the liability of a carrier for its breach of contract, and the DTPA was a general statute, which provided remedies for persons victimized by false, misleading and deceptive acts within the police power of the state. Thus, the court concluded the prime object of the Carmack Amendment was to create a uniform rule of responsibility for interstate commerce and interstate commerce bills of lading, and that a DTPA suit for misrepresentation made prior to contract does not fall within the ambit of federal regulations.

We agree with this holding of the Court of Civil Appeals for the reasons stated in its opinion. 584 S.W.2d 284–291. We also conclude the DTPA's prohibitions against false, misleading and deceptive acts protects a deeply rooted state interest and is an exercise of the right of the State of Texas to protect its citizens from acts such as those committed by American Transfer. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

### MENTAL ANGUISH

To support the allegation of mental anguish resulting from the loss, Brown testified that his wife's social life was limited because she had no transportation; she was upset all the time; and it was "getting wearing on her nerves because we couldn't get replacements and fix up the house the way it should have been." Brown did not allege a willful tort.

■ We agree with the Court of Civil Appeals that this evidence will not support an award of damages for mental anguish under the DTPA. The Act provides for recovery of actual damages. Actual damages means those recoverable at common law.

■ In *Harned v. E-Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953), this Court refused to adopt the "new tort" of intentional interference with peace of mind which permits recovery for mental suffering in the absence of resulting physical injury or an assault and battery. The *Harned* case recognized the well-established rule that mental suffering is compensable in suits for willful torts "which are recognized as torts and actionable independently and separately from mental suffering or other injury."

■ The requirement of a willful tort was again stated in *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1968). This Court held, "Damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body."

The Browns are not entitled to damages for mental anguish as there was no allegation that the wrongful action that caused the suffering was willful, and there was no resulting physical injury.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court except that part of its judgment which awarded recovery for mental anguish. The judgment is modified to deny recovery for mental anguish. The trial court's judgment is otherwise affirmed.

Concurring opinion by GARWOOD, J.

Dissenting opinion by STEAKLEY, J.

## CONCURRING OPINION

GARWOOD, Justice.

I concur in the result with respect to the question of American's entitlement to off-set or credit on account of the insurance proceeds collected by Brown. The case of *Wichita City Lines v. Puckett*, 156 Tex. 456, 295 S.W.2d 894 (1956) did not involve insurance having a waiver of subrogation clause. In my view that opinion's statements respecting "clear and unambiguous" language to be "strictly construed" in order for such an offset or credit to be proper, should not be applied to a waiver of subrogation case where, as contemplated by the parties, the property involved in the transaction is insured by one party under a policy containing such a waiver in favor of the other.

Ordinarily, the only purpose of a waiver of subrogation in such circumstances is to extend a measure of liability protection to the party in whose favor the waiver is made, at essentially no cost to the insured party. This is a reasonable and legitimate use of insurance, and should, without artificial restrictions, normally be given effect where the presence of such insurance is not purely fortuitous and incidental so far as concerns the party in whose favor the subrogation waiver is made. If the agreement between the parties expressly or impliedly requires insurance having a waiver of subrogation, or if for the noninsured party the existence of such insurance is an express or implied condition of the transaction or any of its material terms, this should ordinarily suffice to require that policy proceeds paid the insured party be applied to reduce any liability which the party in whose favor the waiver is made would otherwise have to the insured for covered damage. If the transaction is not so conditioned and the agreement does not *require* insurance having a subrogation waiver, but such is nonetheless procured in connection with the transaction and pursuant to the mutual contemplation of the parties, the same result should obtain if an express or implied agreement or understanding between the parties to that effect is otherwise shown or if there is reasonable detrimental reliance by the party in whose favor the waiver is made.

Here, however, the insurance was purely fortuitous and incidental as to American.

The agreement between Brown and American did not require Brown to carry any insurance, nor did it provide that if insurance were carried it would contain a waiver of subrogation clause in favor of American. The insurance was entirely optional with Brown and was in no sense a condition on American's part to the transaction or any of its terms. Although such insurance was in fact purchased by Brown through American (in its capacity as an agent), there is no testimony whatever by either Brown or American as to any express or implied agreement, understanding or intention in regard to either the waiver of subrogation provision or American's entitlement to credit insurance proceeds paid Brown against liability it might have to him for covered damage. Nor do any of the documents between Brown and American speak to this matter in any way. There is no indication whatever of any detrimental reliance on American's part (it apparently relied on the provision of its contract with Brown limiting its liability to a total of $25).

American points to the bill of lading's provision that "[a]ny carrier or party liable on account of loss or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property." However, there is no evidence that this document was part of the agreement between Brown and American, or that American relied on the quoted provision. The bill of lading was issued by Columbia Export Packers, Inc. (not by American, which described itself as a warehouseman, not a common carrier) and there is no evidence it was received by Brown, or that he was aware of its terms, prior to the delivery of the goods in Alaska. The insurance company paid Brown's claim under a "Loan and Trust Receipt" form purportedly obligating him to repay the insurance company its "loan" to him out of any recovery he might effect from third parties for the damage in question. The form, in its "explanatory note," in essence says that it is designed to circumvent the usual "benefit of insurance"

clause in bills of lading. Subsequent to the insurance payment American wrote Brown expressly asserting that the insurance company had the right to recover from American what it had paid Brown if American were responsible for the damaged condition of the goods.

In my opinion, American's pleadings fairly raised its claim to an offset or credit on account of the insurance proceeds paid Brown. Although the strict standards set out in *Wichita City Lines v. Puckett, supra,* are not properly applicable, American nevertheless failed to tender any evidence sufficient to sustain its entitlement to such relief.

### DISSENTING OPINION IN PART

STEAKLEY, Justice.

I agree with the writing and holding of the Court of Civil Appeals that the collateral source rule does not apply. The issuance of the insurance policy and the payment thereunder were admissible to rebut the amount of damages because the insurance was procured pursuant to the contract between the parties. As pointed out by the Court of Civil Appeals, a fourfold recovery of damages results here from the denial of the general principle forbidding more than one recovery for the same loss. 584 S.W.2d 284 at 291–293.