**WAYNE STRAND PONTIAC–GMC, INC., Appellant,**

v.

**Donald H. McCOLSKEY and General Motors Acceptance Corporation, Appellees.**

**No. 1987cv.**

Court of Appeals of Texas, Corpus Christi.

Oct. 14, 1982.

Rehearing Denied Nov. 18, 1982.

William H. Berry, Corpus Christi, for appellant.

Robert J. Patterson, Latham & Patterson, W. Robert Anderson, Sorrell, Anderson, Sorrell & Chachere, Corpus Christi, for appellees.

Before BISSETT, YOUNG and KENNEDY, JJ.

OPINION

KENNEDY, Justice.

This is a suit based upon allegations of negligence and violations of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 et seq. (hereinafter referred to as the D.T.P.A.). Judgment was entered on jury findings regarding the latter. We reverse.

Omitting certain details, the essential facts of the case are as follows: Appellee McColskey, plaintiff below, brought his 1978 Pontiac Firebird to appellant Wayne Strand Pontiac-GMC, Inc. for repairs after an accident. When he went to pick it up some time later, there were several things noticeably wrong with the vehicle, primary among which was the appearance of approximately 1,300 more miles on the odometer than had been registered when he delivered it. Mr. McColskey was told by appellant's agents that such could be the result

of the odometer having been damaged in the accident and registering incorrectly subsequently. Mr. McColskey, at appellant's request, gave permission to have the odometer calibrated so that the cause of the discrepancy might be pinpointed. When Mr. McColskey returned for his vehicle four days later, it was nowhere to be found, and it was subsequently determined that it had been stolen.

In response to special issues, the jury found, inter alia, that appellant represented to Mr. McColskey that the odometer needed calibration; that such was a false, misleading, deceptive act or practice, and the producing cause of an adverse effect upon Mr. McColskey. The fair market value of the vehicle at the time of the occurrence was found to be $6,800.00, and the reasonable value of use of the vehicle for the period during which Mr. McColskey was deprived of it was set at $410.00.

In entering judgment, the trial court computed prejudgment interest on the $6,800.00 at $1,612.79, and trebled the sum of those two figures,[1] entering judgment on behalf of Mr. McColskey in the amount of $25,238.37, plus attorney's fees.[2]

In his first point of error appellant complains of the trial court's exclusion of evidence concerning various insurance settlements. Much of this evidence is properly before this Court in appellant's bill of exceptions. This evidence tends to show that on December 21, 1978, Mr. McColskey entered into an agreement with his insurance carrier, Motor Insurance Company ("M.I.C."), whereby it was agreed that the value of his vehicle was $7,000.00, and that M.I.C. would pay him that sum, less a $100.00 deductible, or $6,900.00. The agreement contained the following subrogation clause:

"[I]n further consideration of the payment of the above amount by the Corporation, the undersigned hereby agrees that the said Corporation shall be vested with all rights and causes of action the said undersigned has against any person,

persons or corporation whomsoever for damages to the insured property, and the undersigned agrees to execute any documents required by said Corporation in the prosecution of said rights, and the Corporation is hereby authorized and empowered to sue, compromise or settle in the undersigned's name or otherwise."

The evidence in appellant's bill also shows that, pursuant to an arbitration award, appellant's insurer, Home Insurance Company ("Home") paid M.I.C. $5,750.00. This figure represented the $6,900.00 paid by M.I.C. to Mr. McColskey minus $1,150.00 salvage value. Mr. Yoakum, Home's claims adjuster, testified in appellant's bill that the $5,750.00 check was originally made payable to both M.I.C. and Mr. McColskey, but was returned to Home when Mr. McColskey refused to endorse it. A new check made payable only to M.I.C. was then issued. Mr. Yoakum also stated that a check in the amount of $100.00 was sent by Home to Mr. McColskey to reimburse him for the deductible not covered by his M.I.C. policy, but that to the best of his knowledge that check had not been negotiated.

In excluding the evidence in issue the trial court applied the "collateral source rule." The theory behind that rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.1980). In *Brown* the Court applied the rule and held inadmissible evidence of insurance payments made to the plaintiff pursuant to a policy which he had procured at his own option, and the premiums for which he himself had paid. The Court held that the insurance payments were the result of a contract with which the defendant had no privity and to which it had, in no respect, made any contribution. Id. at 935 (citing *Texas & Pacific Ry. Co. v. Levi & Bro.*, 59 Tex. 674 (1883)). Thus, the Court held that the correct application of the rule

---

1. D.T.P.A., supra, § 17.50.

2. The $410.00 found to represent loss of use of the vehicle was not included in the judgment. The record does not reveal why this is.

does not preclude a double recovery. Id. at 936.

The facts in *Brown* are easily distinguishable from those in the instant case. Rather, this case is controlled by *Publix Theaters Corp. v. Powell,* 123 Tex. 304, 71 S.W.2d 237 (1934). In that suit by a lessor of a theater against the lessee for damages caused by fire, evidence of payments pursuant to insurance procured by the lessee and made payable to the lessor was held to be admissible as being outside of the collateral source rule. 71 S.W.2d at 241. The rule of law laid down in *Powell,* and reiterated in *Brown,* is that the defendant is liable for the result of his negligence, but when he has provided for those damages, either by personal payment or insurance payment, the damage claim has been satisfied. *Brown,* supra, 601 S.W.2d at 935; *Powell,* supra, 71 S.W.2d at 241. The testimony in appellant's bill of exceptions makes it perfectly clear that the payments tendered by Home were made on appellant's behalf.

Additionally, we note the presence of the subrogation clause in the agreement presently before us. This also constitutes a distinguishing factor. Compare *Brown,* supra (where there was no subrogation agreement) with *Powell,* supra (where the insurer was subrogated to the rights of the lessor).

Payments made to both Mr. McColskey and M.I.C. therefore fall outside of the collateral source rule, and evidence pertaining to them should have been admitted in support of appellant's properly pleaded offset defense. See *Brown,* supra, at 936. Their exclusion was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. The judgment of the trial court is REVERSED, and the cause REMANDED.

